In re NEW YORK COMMERCIAL CO. Ex parte BROWN BROS. & CO. Appeal of LOWE et al.

(Circuit Court of Appeals, Second Circuit. May 8, 1916.)

No. 119.

1. BANKRUPTCY ☞308—ESTATES—CLAIMS AGAINST.

    Where two bankrupt estates were liable for the claim of a bank, the bank may prove its entire debt against each, and, though one of the bankrupts had furnished collateral security, which was not applied to the debt until after both bankruptcies, may assert its entire claim against the other, undiminished by the fact, receiving dividends until the whole claim is paid.

    [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 496–507; Dec. Dig. ☞308.]

2. BANKRUPTCY ☞340—CLAIMS—EVIDENCE—SUFFICIENCY.

    Where claimant made advances to two corporations, both of which became bankrupt, under an agreement whereby both were to be liable, and

the second corporation deposited security, *held*, under the evidence, that, despite the filing of a claim against the second corporation, which first became a bankrupt, tending to show an application of the security, there was no application of such security before the bankruptcy of the first corporation, and therefore the claim against such corporation was not paid pro tanto.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 527; Dec. Dig. ☞340.]

**3. BANKRUPTCY ☞339—CLAIMS—ESTOPPEL.**

Where claimant's first claim referred to collateral security, recited it was an unsecured creditor to at least a fixed amount, and reserved the right to file further claims, claimant is not estopped from filing a further claim asserting the full amount of the debt, on the theory that the security which had been furnished by another corporation, also bankrupt, had not been applied before bankruptcy, for a creditor has a whole year to prove the exact amount of his claim, and the trustee could not object to the mode.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 525, 526; Dec. Dig. ☞339.]

Appeal from the District Court of the United States for the Southern District of New York.

In the matter of the bankruptcy of the New York Commercial Company. The claim of Brown Bros. & Co. was allowed by the District Court, and John Z. Lowe, Jr., and others, trustees, appeal. Affirmed.

This cause comes here on appeal from an order entered on February 23, 1915, in the United States District Court for the Southern District of New York, confirming the report of a referee in bankruptcy allowing the claim of Brown Bros. & Co. against the estate of the New York Commercial Company, bankrupt, in the sum of $206,845.91.

John W. Ingram and Joseph M. Hartfield, both of New York City (Walter C. Noyes, of New York City, of counsel), for appellants.

Whitridge, Butler & Rice, of New York City (Edwin T. Rice, of New York City, of counsel), for appellee.

Before LACOMBE, COXE, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge. The bankrupt is a Virginia corporation. Its principal office is or was maintained in the city of New York. It was a large importer of rubber. On February 15, 1913, a receiver of the bankrupt, John Z. Lowe, Jr., was appointed by the court of common law of Norfolk, Va., and two days thereafter the said Lowe was appointed ancillary receiver by the Supreme Court of New York, and he thereafter qualified and acted in that capacity.

On April 12, 1913, a petition in bankruptcy was filed in the Southern District of New York against the New York Commercial Company, and it was subsequently adjudicated a bankrupt. It will be hereinafter referred to as the bankrupt. And at a meeting of the creditors held on April 25, 1913, John Z. Lowe, Jr., William A. De Long, and Joseph W. Harriman were duly elected trustees and qualified. On April 25, 1913, Brown Bros. & Co., hereinafter referred to

as the claimants, filed proof of claim, hereinafter referred to as the original proof of claim, against the bankrupt for the gross amount of $225,542.94.

The bankrupt had intimate business relations with the firm of George A. Alden & Co., hereinafter called the Alden firm, a copartnership carrying on business as rubber merchants in the city of Boston. The Alden firm made an assignment for the benefit of its creditors on February 16, 1913, and was thereafter duly adjudicated bankrupt in the District Court of the United States for the District of Massachusetts, upon a petition filed February 21, 1913. In filing the original proof of claim the following reservation was made:

"Messrs. Brown Bros. & Co. request and reserve the right to file an amended proof of claim in a larger or smaller amount when it becomes possible to arrive at a definite statement of the account between them and the bankrupt."

After referring to certain collateral of an estimated value of $121,530, the claimants concluded as follows:

"Deducting such amount from the balance shown on the annexed statement of $225,542.94, would leave Brown Bros. & Co. an unsecured creditor to the extent of at least $104,012.94."

The collateral referred to in the original proof of claim was received wholly from the Alden firm, but its source was not at that time disclosed.

The claimants are bankers having their head office in New York, maintaining a branch house in Boston, and a London house, known as Brown, Shipley & Co. For many years prior to the bankruptcy, the Alden firm had transacted business with the claimants in Boston, an important part of which was the issue by the claimants of commercial letters of credit, under which the correspondents of the Alden firm might draw for the cost of rubber purchased abroad by the Alden firm. In order to establish and maintain the credit of the latter with the claimants in Boston, deposits of collateral security were made from time to time.

The business of the bankrupt which was also the importation of rubber, mainly from Para, also required the issue of commercial letters of credit. Instead of applying directly to the claimants in New York for such letters of credit, the bankrupt obtained credits from the claimants in Boston through the Alden firm as intermediaries. The reason for so doing was to enable the bankrupt to obtain a line of credit based in part upon the collateral security deposited by the Alden firm.

The underlying basis of the issue of credits by the claimants in Boston to either the bankrupt or the Alden firm, was an agreement, bearing date December 21, 1908. This agreement recites that the bankrupt and the Alden firm—

"hereby jointly and severally unconditionally guarantee to Brown Bros. & Co. the full and complete performance of any and all promises and obligations which the undersigned or either of them may make or incur in connection with any letters of credit issued by Brown Bros. & Co. to or at the instance or request of the undersigned or either of them and the full payment when due of the amount of any and all drafts which may be drawn and accepted thereunder or by virtue thereof."

The agreement also provides that the claimants may surrender merchandise under trust receipts, may take additional guaranties and collateral, and grant extension of time for payment—

"and that neither the taking, surrender, sale or other disposition of any such guaranties, security or collaterals * * * shall in any way impair or affect this guaranty or the liability of the undersigned hereunder. Notice of the surrender of any security or collateral or of any default of the undersigned or either of them * * * is hereby expressly waived."

The guaranty, subject to the right to terminate it by giving notice, was declared to be a continuing obligation applicable to all letters of credit at any time issued by the claimants. This agreement was in force at the time of the failure of the bankrupt, and in reliance upon it the claimants had issued in Boston the four letters of credit enumerated in their amended proof of claim.

These letters of credit authorized drafts on the claimant's London house of Brown, Shipley & Co. at 90 days' sight, accompanied by bills of lading and other usual documents representing shipments of rubber. The rubber for which these letters of credit were issued was Para rubber purchased for account of the bankrupt either in London by Messrs. A. H. Alden & Co., Limited, or in Para by Adelbert H. Alden, Limited. Under these four letters of credit, 23 drafts were drawn upon Brown, Shipley & Co., all at 90 days after sight or 3 months after date, between December 23, 1912, and January 31, 1913. The drawers of all the drafts were subsidiaries of the bankrupt. All the drafts matured after the failure of the Commercial Company, the earliest in the latter part of March, 1913, and the latest in May, 1913.

No question was raised by the trustees of the bankrupt in the court below as to the amount of the drafts, or any of them, nor as to the fact that they were wholly unpaid by the bankrupt, except by the sale of undelivered merchandise represented by the bills of lading accompanying the drafts, and the application of the net proceeds toward such payment. At the time of the failure of the Alden firm, as well as of the bankrupt, the claimants held certain collateral, including 1,110 shares of preferred stock of the Commercial Company, 83 shares of Glendale Elastic Fabric Company, certain preferred and common stock of the Seamless Rubber Company, and stock of the East Hampton Rubber Thread Company. This collateral was all received by the claimants from the Alden firm and was the property of that firm.

[1] The claimants clearly had a demand against the bankrupt, and they also had a demand against the Alden firm, likewise a bankrupt, and, having a demand against two insolvent estates, had a right to prove against each for the full amount, and could assert their right against one unimpaired by the fact that they held security against the other. They could recover dividends from the two bankrupt estates upon the full amount of their claim at the time the petition in bankruptcy was filed therein until from all sources they received full payment of their claim, but no longer. Board of Commissioners of Shawnee County v. Hurley, 169 Fed. 92, 94 C. C. A. 362 (1909). Remington on Bankruptcy (2d Ed.) § 1519.

[2] We do not understand that counsel for appellants question the principle above laid down. They deny its application to the facts of

this case. Their contention is that prior to the time when the bankruptcy occurred the claimants had liquidated their claim as against the Alden firm by the application of the collateral, and in doing so had liquidated it as against the bankrupt herein, so that their claim, instead of being secured, had been partly paid.

In turning over the collateral to the claimants the Alden firm, by a writing dated November 18, 1909, expressly authorized the former "to sell all or any part of the same without demand or notice either at public or private sale, on the nonperformance of any of said obligations" due credit to be given for any balance; and it was also provided "that the claimants may purchase at any such sale." It is asserted that this gave the claimants the power to apply the collateral to the indebtedness of the Alden firm at any time after default by that firm.

That the collateral was actually applied was testified to by the bookkeeper of the claimants, who stated that:

"Our claim against George A. Alden & Co. was reduced to about $100,000 by applying the collateral."

It is observed that this testimony is wholly vague and inconsequential. It affords no light upon the important question as to when the collateral was applied. There is no direct evidence as to the precise time when this was done. After filing the original claim as above set forth, the claimants, in the exercise of the right which they had expressly reserved, filed an amended claim against the bankrupt. The original claim was for the balance due after deducting or crediting the value of the Alden collateral. The amended claim is for the total indebtedness due from the bankrupt, without regard to or credit of the Alden collateral.

The important question to be considered, therefore, is whether, under the terms of the agreement of December, 1908, the bankrupt is liable to the claimants for the maximum amount of the unpaid drafts under the letters of credit issued by the claimants, or whether the claim of the claimants against the bankrupt is only for such maximum amount after giving credit for any amount they may have collected from the estate of the Alden firm, including the value of the collateral held by the bankers belonging to that estate.

The referee in bankruptcy reported that in his opinion the trustees of the bankrupt were not entitled in the first instance to the credit of the value of the collateral held by claimants belonging to the estate of the Alden firm. In his opinion the claimants were entitled to prove against either or both of the estates of the bankrupt or of the Alden firm, pari passu, until from either or both sources they had collected and received 100 per cent. of their debt. And this right he held was in no way impaired by the fact that the claimants held additional security belonging to the estate of one of the two debtor concerns, and that neither debtor was entitled to any credit for any collections that had been received by the claimants, in dividends or by liquidation of collateral, from the estate of the other debtor—always with the proviso that all collections must stop when the aggregate thereof reached 100

per cent. of the creditor's debt, which no one contends, however the present controversy is decided, will be the case here.

The District Judge concurred in this view of the matter. The statement that there is indirect evidence that the claim had been reduced prior to February 21, 1913, when the Alden firm was adjudicated a bankrupt, is not persuasive upon a consideration of the testimony as a whole. It is said to be shown by the proof of claim made by a member of the firm of the claimants and which was sworn to, stating that the Alden firm was at and before the filing of the petition in bankruptcy, and still is, indebted to the claimants in the sum of $104,012.94.

This refers to a proof of claim made by Louis Curtis on May 14, 1913. It is pointed out that this claim was presented as an unsecured claim, and that it was averred that the claimants had not "had or received any manner of security for said debt whatever." And we are informed that the claimants could not have had an unsecured claim for a balance of advances of $104,012.94 in February, 1913, unless the collateral the claimants held had been taken over by them before that time. They say it necessarily follows that there was an application of the collateral to the claim before the filing of the petition in bankruptcy. They insist that the only alternative is that the claimants, although secured creditors, proved their debt as unsecured creditors, and if they did this they waived their security. But it seems to us that to give the recognition to this proof of claim that counsel ask us to give it is to ignore other testimony and is unwarranted. A certified copy of his proof of claim was shown Mr. Curtis when on the stand at the trial, and he was asked if he had ever seen the original and the reply was, "I don't remember it." He was asked if he recalled having executed it and answered, "I don't remember it." His testimony showed that he had very little accurate and detailed knowledge about the relations of the Alden firm with his own. In view of the original proof of claim and the amended proof of claim, one filed before and one after Mr. Curtis' statement, and contradictory of it, we cannot allow what appears in his statement to be controlling.

The statement of account shows that the debts amounted to $269,042.47; that there were estimated miscellaneous receipts which it was expected, if they materialized, would reduce this sum to $225,542.94. It also shows, as it was required to show, what collateral was held, and stated that the value thereof was "uncertain" but estimated at $121,530. In view of the filing, after the bankruptcy, of the statement of account showing that at that time claimants held as collateral the various stocks specified therein to the amount of $121,530, the argument that prior to that time this collateral had been actually applied to the reduction of the debt is not persuasive.

The original proof of claim was sworn to on April 25, 1913, by Mr. T. N. Brown, a member of claimants' firm. He stated in his sworn statement that the bankrupt "was at and before the filing" of the petition for adjudication in bankruptcy, "and still is, justly and truly indebted" to the claimants in the sum of at least $225,542.94. He added:

"The shares of stock held as collateral by Messrs. Brown Bros. & Co., as shown in the annexed statement, upon information and belief, are not of a

value greater than $121,530. Deducting such amount from the balance shown on the annexed statement, of $225,542.94, would leave Brown Bros. & Co. an unsecured creditor to the extent of at least $104,012.94."

The amended proof of claim sworn to by Mr. Morean Delano, a member of the claimant's firm, and which was sworn to on February 17, 1914, gives the amount of the indebtedness then due from the bankrupt as $221,487.06 and that no part of the indebtedness had been paid.

We cannot, therefore, concur in thinking that the collateral had ever actually been applied to a reduction of the indebtedness prior to the bankruptcy. The conclusion of the master and of the District Judge respecting the matter commends itself to us upon a consideration of the testimony as a whole. It is not necessary for us to attempt to explain Mr. Curtis' statement, which is irreconcilable with the other testimony. But evidently he did not prepare the statement himself, and whoever prepared and explained it to him was mistaken in his facts. No reduction of the 'debt had taken place prior to the bankruptcy. The case is therefore subject to the principle heretofore referred to in this opinion and laid down in Board of Commissioners of Shawnee County v. Hurley, supra.

[3] It is urged upon us, however, that claimants are now estopped from enforcing their amended claim against the estate of the bankrupt. It is said the bankrupt was liable only as a guarantor of the obligations of the Alden firm; that the Alden firm, having procured the letters of credit, was liable to the claimants as the principal debtor, and that the bankrupt was the guarantor. But this is error. The contract of guaranty in this case is joint and several, binding both equally for the debt of either. So far as the suggestion of estoppel is based on any theory of principal and surety it is without merit. In their brief the counsel say:

"Assuming, then, that if the claimants had originally presented their amended claim, the trustees would have had the right to prove over against the Alden estate, it follows that they were estopped from presenting it at a later time if the trustees were misled by their action and lost such right. And it is evident that the trustees did lose their rights. When they saw the claimants' demand presented against the Alden estate for $104,012.94, and a similar demand presented against their own estate, they had a right to rely upon that amount as the limit of the claimants' demand. Having done so, and the Alden bankruptcy having been settled by a composition proceeding, the trustees were remediless when, after nearly a year, the claimants filed their amended claim."

But in taking the position above outlined counsel ignore the fact that the original proof of claim contained a proviso expressly reserving the right to file an amended proof of claim in a larger or smaller amount, when it should be possible to arrive at a definite statement of the account between the claimants and the bankrupt. We know of no reason why the claimants were not entitled to exercise that right, as they did, within the statutory year. Fellow creditors have no right to object to the proving of a creditor's claim at its correct amount at any time within the statutory year, so that the creditor may receive his correct pro rata share of the estate, if not already distributed.

And the bankrupt cannot object to the exercise of such a right by a claimant. We do not see how anybody's rights have been in the least degree prejudiced by the action taken.

The order is affirmed.

LACOMBE, Circuit Judge, heard the arguments, participated in the consultation, and indicated concurrence in the conclusions above expressed, but did not see the text of the opinion.

---

⚖=For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes