### IRETON v. LINCOLN NAT. BANK.

(Circuit Court of Appeals, Sixth Circuit. July 2, 1924.)

No. 4041.

1. **Bankruptcy ⬡140(½)—Giving demand notes for amount of acceptances held not to show passing of title thereto.**

Where bankrupt discounted trade acceptances with bank, and, on dishonor, gave demand notes covering amount of each trade acceptance, declaration in notes that trade acceptances were held as collateral *held* not to show passing of title thereto from bank to bankrupt, and accepting, in place of such title, of a lien thereon, as against inference that bank did not intend to part with absolute title to notes.

2. **Bankruptcy ⬡322—Holder of notes may prove full amount against both maker and indorser.**

Where maker and indorser of notes or acceptor and indorser of a bill of exchange, are both bankrupt, holder may prove in each bankruptcy proceeding full amount due thereon, and may receive dividends, subject only to limitation that he shall not receive more than full amount of claim due him.

Appeal from the District Court of the United States for the Western Division of the Southern District of Ohio; Smith Hickenlooper, Judge.

Claim by the Lincoln National Bank, opposed by Louis A. Ireton, trustee in bankruptcy. From an order in favor of claimant, the trustee appeals. Affirmed.

⬡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Oscar W. Kuhn, of Cincinnati, Ohio, for appellant.

Charles H. Stephens, Jr., of Cincinnati, Ohio (Stephens, Lincoln & Stephens, of Cincinnati, Ohio, on the brief), for appellee.

Before DENISON, MACK, and DONAHUE, Circuit Judges.

PER CURIAM. [1, 2] The facts are stated in Judge Hickenlooper's following opinion. The question is whether the declaration in the demand notes, that the trade acceptances were held as collateral, is effective to demonstrate the passing of the title to these acceptances from the bank to the bankrupt and the accepting in place of such title of a mere lien thereon, as against the otherwise inevitable inference that the bank did not intend to part with that absolute title which it had acquired. The majority of the court is satisfied that, for the reasons stated by the District Judge, the latter inference is the sounder conclusion.

The order is affirmed.

HICKENLOOPER, District Judge. Long prior to bankruptcy, the bankrupt discounted with the claimant, the Lincoln National Bank, certain trade acceptances aggregating $31,884.64. These were drawn by the bankrupt on the Harrison Shoe Company and the Kimball Bros. Company, retail shoe merchants in Chicago, for goods sold to said companies by the bankrupt. Such drafts were duly accepted, by the drawees, were indorsed by the bankrupt, and discounted in the usual course of business by the bank. The avails of such discounts were credited to the account of the bankrupt, and the items charged to "Foreign Bills Discounted." Likewise, prior to bankruptcy of the Manss-Owens Company, all of these trade acceptances were presented to the acceptors, were dishonored and protested for nonpayment, and shortly thereafter each of the acceptors went into bankruptcy or insolvency liquidation under state laws. Claims were proved by the bank in these proceedings to administer the estates of such acceptors, notwithstanding the fact that upon the dishonoring of the trade acceptances and their protest the bank had called to the attention of the bankrupt herein the fact that bank examiners frequently criticized bank officials for carrying past-due paper, and suggested that to meet this situation the bankrupt herein give demand notes covering the amount of each trade acceptance so dishonored and protested. This was done, the several trade acceptances being attached to the demand notes and designated therein as collateral. At no time did the bank relinquish possession of the acceptances, nor was any change made in the account of the bankrupt. In other words, a check was not given for the protested acceptances by the bankrupt and then the amount of the demand notes credited to such account. The only bookkeeping entry made by the bank was to credit the bank's "Foreign Bills Account" and to charge the "Call Loans Account" with the amounts of the several acceptances and demand notes.

Dividends were paid from time to time by the acceptor bankrupts, and at the time of the bankruptcy herein there was due the bank, upon the paper already mentioned and other unsecured obligations, the sum of $88,256.87. Subsequent to the filing of the petition herein there were paid to the bank various amounts aggregating $9,081.07, as dividends from the estates of the bankrupt acceptors. The precise question which we are called upon to decide is whether the taking of the demand notes above mentioned, with the several acceptances attached thereto, and styled as collateral, converted the claim of the bank from an unsecured to a secured claim, thus defeating the right of the bank to prove their claim to the amount of $9,081.07, which it is contended is the value of such security and was realized thereon.

It is now too well-settled to admit of serious controversy that, where the maker and indorser of a promissory note (or the acceptor and indorser of a bill of exchange) are both bankrupt, the holder of such note or bill of ex-

change may prove in each bankruptcy proceeding the full amount due thereon at the time of the filing of the several petitions in bankruptcy, and that such holder may receive dividends upon such proofs of claim subject only to the limitation that he shall not receive more than the full amount of the claim due him.   Board of County Commissioners v. Hurley, 169 Fed. 92, 94 C. C. A. 362; In re Simon (D. C.) 197 Fed. 105; In re New York Commercial Co., 233 Fed. 906, 147 C. C. A. 580; In re Shatz (D. C.) 251 Fed. 351.

It follows, therefore, that, had the bank not attempted to avoid criticism from the bank examiner by the taking of demand notes, with the several bills of exchange styled as collateral thereto, no question could arise as to the bank's right to prove its claim in the present proceeding for the full amount due upon such trade acceptances at the time of the filing of the petition herein, notwithstanding proof had already been made for the same or greater amounts in the matter of the estates of the bankrupt acceptors.   It cannot likewise be doubted that, after the allowance of such claims, the payment of dividends upon the claim by one bankrupt estate would in no wise affect the right to dividends upon the claim against the other.

The question is, therefore, as has been stated, whether by the acts of the parties prior to bankruptcy the claim upon the several acceptances was converted into a secured claim, with the acceptances as security.   The referee held that it was, and reduced the amount of the provable claim by the amount received as dividends from the bankrupt acceptors after the filing of the petition herein and before the claim was allowed.

Certainly, the bank could not prove upon both the demand notes and the obligation of the bankrupt as indorser of the acceptances, but at the time the bank discounted the acceptances the bank became the absolute owner of such instruments, and the obligation of the bankrupt to pay, if the acceptor did not, became fixed.   At the time the demand notes were given, there was certainly no intention upon the part of either of the parties to release the bankrupt from this obligation, which had already become fixed and absolute. Nor do we think that the giving of the demand notes had any such effect at law, against the intention of the parties, especially since no effect was given to it in the account of the bankrupt, and since the bank retained, with the consent of the bankrupt, the possession and control of the acceptances, and never abandoned its position as a holder for value thereof.   The purpose of the giving of the demand notes was simply to satisfy a bank examiner, and although such purpose may not be highly commendable, as involving a certain degree of deception, we are clearly of the opinion that the obligation of the bankrupt herein, having once attached, was never subsequently discharged.   This obligation is still existing, was provable as such, and as it existed at the time of the filing of the petition herein, viz. the obligation of the indorsing bankrupt, for the amount still due upon such trade acceptances at the time of the filing of the petition herein.   In our opinion, no deduction should be made for the amount of dividends received from the estates of the bankrupt acceptors after the date just above mentioned.