In the Matter of the Application of THE PEOPLE OF THE STATE OF NEW YORK, by GEORGE S. VAN SCHAICK, as Superintendent of Insurance of the State of New York, for an Order to Take Possession of the Property and Liquidate the Business and Affairs of the GUARDIAN CASUALTY COMPANY.

In the Matter of the Application of THE PEOPLE OF THE STATE OF NEW YORK, by GEORGE S. VAN SCHAICK, as Superintendent of Insurance of the State of New York, for an Order to Take Possession of the Property and Liquidate the Business and Affairs of the LLOYDS INSURANCE COMPANY OF AMERICA.

Supreme Court, Special Term, New York County, January 27, 1937.

*Louis Pressman* [*Moses Feltenstein* and *Abraham Rosenstein* of counsel], for the claimant.

*Lester Weil,* for the Superintendent of Insurance of the State of New York.

COTILLO, J. The Superintendent of Insurance, acting as liquidator of the Guardian Casualty Company and also of the Lloyds Insurance Company of America, is seeking in this application instructions from the Supreme Court in respect to the claim filed by the estate of Andrew Dull in the liquidation proceeding of Lloyds Insurance Company and also a claim by the same estate in the liquidation proceeding of the Guardian Casualty Company.

On or about the 26th day of March, 1931, one Andrew Dull, while engaged in his occupation in a building in the course of construction at 14 Washington place, was precipitated from the fifteenth story of said structure and killed, leaving his widow Mary Dull, the claimant herein, and five minor children. At the time of his death Dull was employed by the Ætna Fireproof Arch Co., Inc., which corporation, as well as Fassler & Klein Iron Works, Inc., was engaged in some capacity in the construction of said building. 14 Washington Place Corporation was the owner of the building. Fassler & Klein Iron Works, Inc., was covered against risks in connection with its work on said building by an insurance policy issued by Guardian Casualty Company, the maximum liability for death or injury to one person being $30,000. The owner was covered by a policy of insurance issued by the Lloyds Insurance Company of America, covering risks of public liability in the sum of $50,000 against death or injury to one person.

An action was commenced in the Supreme Court to recover for the death of Dull against Fassler & Klein Iron Works, Inc., and the 14 Washington Place Corporation, each of the defendants appearing by separate attorneys, which attorneys were employed by the insurer of the defendants. The trial of the action took place on the 9th and 10th days of April, 1934, and resulted in a verdict in favor of the plaintiff and against both defendants in the sum of $35,000, and judgment was entered for this sum plus interest and costs in the sum of $41,557.18. On August 14, 1933, prior to the trial of the action, the Lloyds Insurance Company of America was placed in liquidation, pursuant to an order of this court. On June 2, 1934, after the judgment was entered, the Guardian Casualty Company was likewise placed in liquidation by an order of this court.

On the 16th day of October, 1933, Mary Dull filed a proof of claim in the " Lloyds " liquidation proceeding, asking damages in the sum of $100,000.

On the 28th day of June, 1934, she filed a claim with the liquidators of the " Guardian " in the sum of $41,557.18, the face amount of the judgment recovered. For the purpose of this motion, the defendants Fassler and Klein Iron Works, Inc., and the 14 Washington Place Corporation are to be considered as worthless, financially. . It is conceded by the liquidator, on behalf of both insurance carriers, that the judgment entered after trial is a proper determination of the amount of damages and that such allowances as are proper in either liquidation proceeding may be computed thereupon. The sole question to be determined in this application is what portion of the judgment should be allowed in each of the

liquidation proceedings. The claimant contends that in the "Lloyds" liquidation proceeding she is entitled to an allowance in the sum of $40,192.42, consisting of $35,000, the amount of the verdict, plus $5,022.74 representing interest from the date of the death to the date of liquidation, plus $169.68 costs. In the "Guardian" liquidation she claims the sum of $30,000, the limit fixed in the Guardian's policy.

The liquidator takes the position that if the insurance carriers are deemed to take the place of the tort feasors, then the claimant should be allowed fifty per cent of the judgment in each of the proceedings. This contention is based upon the theory that an allowance in a liquidation proceeding is tantamount to payment. In the event that the insurance carriers are not deemed to take the place of the tort feasors, then the claimant comes into each proceeding upon contractual rights which the assured had against their respective insurance carriers.

The claimant, on the other hand, contends that she is entitled to an allowance of the full judgment against Lloyds and an allowance of $30,000 against Guardian, dividends to be paid upon both allowances until such times as those dividends, together with any other sums she may be able to acquire from either 14 Washington Place Corporation or Fassler & Klein Iron Works, Inc., equal the amount of the judgment, together with interest earned thereon.

In determining the allowance to be permitted against each of the liquidation proceedings it must be borne in mind that the judgment obtained by the claimant is both a joint and several obligation against the owner and Fassler & Klein Iron Works, Inc. Although it cannot be said that the insurance carrier stands in the same position as the insured, nevertheless, as expressed by the Court of Appeals, the effect of section 109 of the Insurance Law gives to the injured person a cause of action against the insurance company as a solvent principal seeking indemnity after judgment has been satisfied. (*Coleman* v. *New Amsterdam Casualty Co.,* 247 N. Y. 271.) Therefore, it must be conceded that if either of the defendants had paid the judgment of the claimant, defendant would have been able to recover from its insurance company, or in a situation where the carrier is in liquidation, the insured could have filed its claim for the full amount.

Prior to September 1, 1928, in an action against two or more joint tort feasors, the plaintiff could have satisfied his judgment out of the assets of one of the joint debtors, leaving that debtor without any recourse against any of his codefendants. Chapter 714 of the Laws of 1928, in effect as of September 1, 1928, and known as section 211-a of the Civil Practice Act, modified the ancient rule

of law (*Haines* v. *Bero Engineering Constr. Corp.*, 230 App. Div. 332) and permitted contributions between joint tort feasors.

The claimant would have the right to issue execution against either or both of the defendants and, if execution was returned unsatisfied, would be entitled to institute an action for the full claim against either or both of the casualty companies, if they were not in liquidation. The order of liquidation of an insurance company is solely for the purpose of marshaling and preserving the assets and then distributing them to the proper claimants. It is not for the purpose of depriving a claimant of any rights.

Neither the attorney for the liquidator nor for the claimant has been able to cite any decisions of a court on the question involved. The nearest to a decision of any court is the opinion of Jacob Shientag, Esq., a referee appointed by this court, in *Matter of Consolidated Indemnity & Insurance Co. and Guardian Casualty Co.* The referee, in passing upon a proposition similar in theory to the one involved herein, wrote as follows:

" The sureties herein jointly and severally guaranteed payment of the notes, with interest, limiting only the guaranteed liability of each to the sum set opposite its name. It made no difference who paid the notes when they matured. The fact that payments were made by the sureties on the basis of $1,000,000 on the face amount of the bond, instead of on the basis of $1,036,033.28; the sum total of the commitments set forth in the schedule attached thereto is immaterial. The McClintic-Marshall Corporation was entitled to receive payment of $30,000 with interest for each note as it came due. How the sureties contributed towards the sum, the proportion paid by each or the basis of computation of such proportions was of no importance. The fact that claimant knew how each surety computed its liability or the basis of the contribution made by each, and that Consolidated's payments were predicated upon an assumed liability of $88,966.68, rather than $125,000, does not alter the situation. Under no circumstances, of course, is the obligee entitled to receive an aggregate of more than $1,000,000. Until it receives that amount, the commitment of each surety in the sum set opposite its name is fixed as absolute. The agreement of the parties cannot be changed or altered. The fact that the McClintic-Marshall Corporation may have filed claims in various proceedings against the defaulting sureties for a sum which, together with payments theretofore made, aggregates more than $1,000,000,00 is no bar to the allowance of this claim herein. It may resort to as many sources as it can to collect the full amount due it. (*Matter of New York Commercial Co.*, 233 Fed. 906) (CCA., 2d 1916; Corpus Juris, Vol. 32, p. 879, paragraph 170.)

" An interesting discussion of a closely analogous situation may be found in *McPhee* v. *United States*, 64 Colo. 421; 174 Pac. 808. Consolidated's solemn obligation under seal cannot, under the circumstances herein, be modified or reduced to conform to the practice indulged in by the sureties in making payments to the obligee, even though the latter was fully cognizant of the method, manner and basis of such payments. The rights and liabilities of the several sureties *inter sese* are irrelevant in this proceeding. Consolidated's payments on the basis of a liability of $88,966.68 is a matter between it and the other sureties on the bond, and in no way can be construed as an agreement by the claimant herein to a reduction of the commitment expressed in the schedule."

His report was confirmed by Mr. Justice HAMMER, and an order entered thereon on the 26th day of June, 1936.

Although there appears to be a dearth of opinions on this subject in the State courts, the Federal reports are replete with decisions in similar circumstances in bankruptcy proceedings. 32 Corpus Juris (p. 879, § 170, note 90), under insolvency, says: " Claim against several insolvents. A claim held by a creditor upon which several insolvents are liable may prove it against both estates, but cannot recover through one or both of such proceedings more than sufficient to satisfy his claim."

In *Matter of N. Y. Commercial Co.* (233 Fed. 906; 147 C. C. A. 580, N. Y.) it was held that where two bankrupt estates were liable for the claim of a bank, the latter may prove its entire debt against each, and though one of the bankrupts had furnished collateral security, may assert its entire claim against the other undiminished by the fact, receiving dividends until the whole claim is paid, but no more. There claimant, a banker, made advances to two corporations, both of which became bankrupt, under an agreement whereby both were to be jointly and severally liable. Judge ROGERS in writing for the Circuit Court of Appeals said (p. 909): " The claimants clearly had a demand against the bankrupt, and they also had a demand against the Alden firm, likewise a bankrupt, and, having a demand against two insolvent estates, had a right to prove against each for the full amount, and could assert their right against one unimpaired by the fact that they held security against the other. They could recover dividends from the two bankrupt estates upon the full amount of their claim at the time the petition in bankruptcy was filed therein until from all sources they received full payment of their claim, but no longer. *Board of Commissioners of Shawnee County* v. *Hurley*, 169 Fed. 92; 94 C. C. A. 362 (1909). Remington on Bankruptcy (2d ed.) Sec. 1519." And he said further (p. 910): " In his opinion the claimants

were entitled to prove against either or both of the estates of the bankrupt or of the Alden firm, *pari passu*, until from either or both sources they had collected and received 100 per cent of their debt. And this right he held was in no way impaired by the fact that the claimants held additional security belonging to the estate of one of the two debtor concerns, and that neither debtor was entitled to any credit for any collections that had been received by the claimants, in dividends or by liquidation of collateral, from the estate of the other debtor — always with the proviso that all collections must stop when the aggregate thereof reached 100 per cent of the creditor's debt."

In view of the foregoing, the court instructs the liquidator to allow the claim of the Dull estate to the full extent thereof as against the liquidators of both insurance companies. Settle order.