**LAW ENFORCEMENT INSURANCE COMPANY, LTD.,**
Plaintiff-Appellant,

v.

**James P. CORCORAN,**
Defendant-Appellee.

**No. 312, Docket 86–7658.**

United States Court of Appeals,
Second Circuit.

Argued Oct. 24, 1986.

Decided Dec. 12, 1986.

Frank H. Wright, New York City (Grand & Ostrow, New York City, of counsel), for plaintiff-appellant.

Thomas M. Campbell, New York City (Mathias E. Mone, Marc J. Korpus, Cahill, Gordon & Reindel, New York City, of counsel), for defendant-appellee.

Before KAUFMAN, NEWMAN and PRATT, Circuit Judges.

IRVING R. KAUFMAN, Ciruit Judge:

We are required in this case to revisit a recurring tension in our dual system of justice. The federal courts have a fundamental obligation to adjudicate controversies within their jurisdiction. Yet they also have a duty to abstain from doing so when the case falls within one of the narrow recognized categories of instances in which, because of related state proceedings, action by the federal courts would be thoroughly unproductive.

We have concluded that this is one of those rare cases in which the federal courts should, in deference to a state forum, withhold access from a suitor properly invoking their jurisdiction. Specifically, because continuation of the federal action here would disrupt New York's unified administrative and judicial framework for the administration of the estates of insolvent insurance companies, we hold that the federal plaintiff must, in the first instance at least, seek relief from the New York courts.

## FACTS

The relevant facts are straightforward and not in dispute. Law Enforcement Insurance Company, Ltd. ("LEICL") is a Bermuda insurance company that was established in 1977 to provide coverage to law enforcement personnel against liabilities arising from civil rights actions.

In December of 1983, LEICL entered into an agreement with Ideal Mutual Insurance Company ("Ideal"), a New York company. The parties agree that this agreement required Ideal to assume the obligation to provide reinsurance on various LEICL policies. In addition, LEICL claims that the agreement required Ideal to assume LEICL's direct insurance obligation on the policies that had been issued during the year 1977.

In late December of 1983, the Superintendent of Insurance of the State of New York ("Superintendent") commenced a proceeding in the Supreme Court, New York County, pursuant to N.Y.Ins.L. § 7402 alleging that Ideal was insolvent and asking to be named as rehabilitator. An order to this effect was entered by that court on December 26, 1984.

In January of 1985, having concluded that further attempts to rehabilitate Ideal would be futile, the Superintendent sought from the same court an order pursuant to N.Y.Ins.L. § 7417 terminating the rehabilitation proceeding and vesting the business of Ideal in himself for the purpose of liquidating it. On February 7, 1985, the court entered the requested order, which, pursuant to N.Y.Ins.L. § 7419, included a provision enjoining all persons with claims against Ideal "from bringing or further prosecuting any action at law, suit in equity, special or other proceeding against the said corporation or its estate, or the Superintendent and his successors in office, as Liquidator thereof."

LEICL informed the Superintendent of its view that Ideal was obligated under the 1983 agreement to defend and pay claims on the 1977 policies, and received in response a letter rejecting its position.

On February 7, 1986, LEICL filed an action against the Superintendent in the United States District Court for the Southern District of New York. Premising jurisdiction upon diversity of citizenship, the action sought a declaration that Ideal was obligated as a direct insurer on the 1977 policies.

The Superintendent responded to the complaint by moving for an order dismissing the action in deference to the state liquidation proceedings. After full briefing and oral argument, the district court granted the motion. In an opinion reported at 640 F.Supp. 271 (S.D.N.Y.1986), it held that, under the doctrine of *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), it should abstain from exercising its jurisdiction. LEICL appeals.

## DISCUSSION

■ The Supreme Court of the United States has identified four categories of cases in which federal courts should abstain in deference to state courts, two of which are relevant here.[1] While usefully separated for purposes of analysis, these categories are not watertight, and in considering the factors applicable to each category, the federal courts are not to apply "a mechanical checklist," but rather are to conduct "a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 16, 103 S.Ct. 927, 937, 74 L.Ed.2d 765 (1983). Because these factors are "to be applied in a pragmatic, flexible manner with a view to the realities of the case at hand," *id.,* at 21, 103 S.Ct. at 940, the district court is granted some latitude in its decisionmaking; our review applies an abuse of discretion standard. *Bethlehem Contracting Co. v. Lehrer/McGovern, Inc.,* 800 F.2d 325, 327 (2d Cir.1986).[2]

■ With these principles in mind, we consider the application to this case of two categories of abstention. Since the district court confined its consideration to the possible applicability of *Colorado River, supra,* we begin our analysis at that point.[3]

### I. *Colorado River* Abstention

■ In *Colorado River,* the Supreme Court faced a factual situation in which state court litigation seeking to settle certain water rights threatened to proceed concurrently with a suit on the same subject brought by the United States on its own behalf and that of several Indian tribes against some 1,000 defendants in a distant federal courthouse. Faced with facts that did not fall within any of the narrow recognized grounds for abstention, the Court decided to recognize a new limited class of "exceptional" cases in which "for reasons of wise judicial administration" and conservation of resources, a federal court should defer to concurrent state proceedings, *Colorado River, supra,* 424 U.S. at 818, 96 S.Ct. at 1246.

1. This case does not involve abstention to permit state courts to interpret a state statute in a way that might avoid a federal constitutional question, *see Railroad Commission of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941) or abstention from interference in ongoing state criminal or quasi-criminal proceedings, *see Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); *see also Trainor v. Hernandez,* 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977); *Juidice v. Vail,* 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977); *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975).

2. This case, then recently decided, was called to our attention on oral argument. In the interests of all concerned, we urge counsel who discover previously uncited authority to avail themselves of the mechanism of Fed.R.App.P. 28(j) to call it to the attention of both ourselves and opposing counsel in writing.

3. We note, however, that since *Colorado River* abstention applies, if at all, only in cases where traditional forms of abstention do not, *Moses H. Cone, supra,* 460 U.S. at 14–15, 103 S.Ct. at 936; *Colorado River, supra,* 424 U.S. at 817, 96 S.Ct. at 1246, district courts should ordinarily consider the traditional abstention doctrines first, thereby reducing the chances of either unnecessary or incomplete legal discussions.

In *Moses H. Cone*, the Court reaffirmed the doctrine, while emphasizing the rarity of its application by declining to apply it to the facts at hand, adding, as noted, that the federal courts' weighing of cases must be "with the balance heavily weighted in favor of the exercise of jurisdiction," *Moses H. Cone, supra*, 460 U.S. at 16, 103 S.Ct. at 937.

In light of this "heavy presumption favoring the exercise of jurisdiction," *Bethlehem Contracting, supra*, 800 F.2d at 327, we believe that the decision of the district court to dismiss on *Colorado River* grounds was erroneous. This conclusion follows from a considered weighing of the various factors which the precedents counsel are to be evaluated in determining whether the circumstances are "exceptional."

### (a) *Avoidance of Piecemeal Litigation*

■ The district court viewed as the strongest exceptional circumstance here that opening the doors of the federal courthouse to LEICL would similarly open them to "countless other plaintiffs" nationwide. While this fear was soundly based, it did not of itself provide a basis for *Colorado River* abstention.[4]

The "danger of piecemeal litigation" was the paramount factor in the Supreme Court's approval of abstention in *Colorado River*, which involved a federal statute, the McCarran Amendment, whose "primary policy" was the avoidance of piecemeal litigation. *Moses H. Cone, supra*, 460 U.S. at 19 & 20 n. 22, 103 S.Ct. at 938 & 939 n. 22. In *Moses H. Cone*, in contrast, the Court agreed that the result of a refusal to abstain would be duplicative litigation, but refused to give this consequence any weight, since it resulted from the demands of the relevant federal law, in that case the federal Arbitration Act. Id. at 20, 103 S.Ct. at 939.

Here, the danger of suits nationwide arises solely as a result of the existence of diversity jurisdiction. And while there have been many scholarly and judicial expressions of doubt as to the desirability of its continuation, so long as Congress chooses to have us exercise diversity jurisdiction, we must do so unflaggingly.

LEICL informs us in its brief that it chose a federal forum because of "concern that its status as a foreign corporation and the fact that LEICL was suing the New York Superintendent of Insurance would redound to prejudice LEICL's position in a state court action." Whatever our view of the validity of that fear, Congress has given LEICL—and, by extension, plaintiffs in the same position—the right to act on it, and "we have a duty to respect that right." *Giardina v. Fontanta*, 733 F.2d 1047, 1053 (2d Cir.1984).

Thus, the factor upon which the district court relied most heavily was not an exceptional circumstance within the meaning of *Colorado River*. It was, rather, an unremarkable result of the application to this case of a considered federal policy. *Cf. Lumbermens Mutual Casualty Co. v. Connecticut Bank & Trust Co.*, 806 F.2d 411 (2d Cir.1986) (nationwide suits against insurance company exceptional circumstance under *Colorado River* where failure to abstain could lead to inconsistent interpretations of same policy).

### (b) *Control of a Res*

■ In *Colorado River*, the Court noted a line of cases holding that a "court first assuming jurisdiction over property may exercise that jurisdiction to the exclusion of other courts." *Colorado River, supra*, 424 U.S. at 818, 96 S.Ct. at 1246.

However, the mere fact that the federal and state proceedings concern the same subject matter does not make a case exceptional. *Colorado River, supra*, 424 U.S. at 816, 96 S.Ct. at 1245. Rather, this rationale applies only where the exercise by one court of its jurisdiction would tend to im-

---

4. As we discuss in Part II, this concern would have had a good deal of force in an analysis under *Burford v. Sun Oil*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). But the district court expressly disclaimed such an analysis, 640 F.Supp. at 272.

pede or embarrass the other court in the exercise of its jurisdiction. *See, e.g., Tolfree v. New York Title & Mortgage Co.*, 72 F.2d 702 (2d Cir.1934).

 Viewing the present case in isolation, that is, without consideration of New York's statutory scheme for the liquidation of insolvent insurance companies (which we discuss in Part II), this concern is not implicated here. LEICL could obtain in federal court the declaration it seeks and then present its claim to the New York liquidation court without any unseemly interference on the part of the federal courts in state court proceedings. Indeed, it is the general rule that there is no need for deference where the proceedings in one court seek no more than a declaration of rights to property being administered by another. *General Baking Co. v. Harr*, 300 U.S. 433, 57 S.Ct. 540, 81 L.Ed. 730 (1937); *Commonwealth Trust Co. of Pittsburgh v. Bradford*, 297 U.S. 613, 56 S.Ct. 600, 80 L.Ed. 920 (1936); *Dempsey v. Pink*, 92 F.2d 572 (2d Cir.1937), *cert. denied*, 303 U.S. 648, 58 S.Ct. 747, 82 L.Ed. 1109 (1938); *Slotkin v. Brookdale Hospital Center*, 357 F.Supp. 705, 707–08 (S.D.N.Y.1972).

### (c) *Other Factors*

Various other factors canvassed by the Supreme Court are of relatively minor significance here. None of them, individually or in combination, provides "the clearest of justifications," which alone will warrant a dismissal. *Colorado River, supra*, 424 U.S. at 819, 96 S.Ct. at 1247.

In *Colorado River*, the Supreme Court gave weight to the inconvenience of concurrent state and federal proceedings in light of the 300–mile distance between the state and federal courthouses. In this case, the two courthouses are adjacent to each other.

Nor is this a case where any weight may be put on the order in which the federal and state cases were begun. Again considering LEICL's claim individually, the state forum had not made any substantial progress towards assessing its merits when the federal suit was filed. *See Moses H. Cone, supra*, 460 U.S. at 21, 103 S.Ct. at 939.

While state rather than federal law provides the rule of decision in this diversity case, only elementary contract principles, rather than novel or obscure state law issues, are involved. *See Bethlehem Contracting, supra*, 800 F.2d at 328. *Cf. Telesco v. Telesco Fuel and Masons' Materials, Inc.*, 765 F.2d 356, 363 (2d Cir.1985).

And, as more fully discussed below, the relief available in the state and federal courts seems to be of approximately equal efficacy.[5]

There is a closer question concerning the weight to be given to the state court injunction. However, particularly considering the undesirability of permitting state court injunctions to control federal courts in the exercise of their jurisdiction, we do not consider this factor as being of nearly sufficient weight to tip the balance. Rather, following *Dempsey, supra*, we read the injunction narrowly, as not precluding the purely declaratory relief sought here.[6] *See Slotkin, supra.*

From what has been said, it should be clear that we are unable to agree with the district court "that this is one of the rare cases in which *Colorado River* abstention is appropriate." 640 F.Supp. at 272. Indeed, if LEICL's claim had come to us in isolation, we should be constrained to reverse. But, as we now discuss, LEICL's claim cannot, and should not, be wrenched from the context in which the state court

---

5. In view of the disagreements subsisting between the parties as to LEICL's rights under state law, LEICL will remain free after pursuing its state remedies pursuant to our decision to return to the district court in the event that it is able to present evidence to the effect that its rights may not be adequately asserted by proceedings in the liquidation court.

6. Although the opinion in *Dempsey* does not mention the fact specifically, the record of that case reveals that the Supreme Court, New York County, had entered an injunction virtually identical to the one here.

acted, the context of a unified administrative/judicial proceeding.

## II. *Burford* Abstention

 *Burford, supra,* was an attack by an oil company in federal district court on a decision of the Texas Railroad Commission granting a drilling permit to a competitor. The Supreme Court held that the case was one for abstention because: (1) the order under attack was part of a unified regulatory scheme on a complex subject matter of special state interest, a scheme in which the state administrative agency and the state courts cooperated closely to safeguard the values of uniformity, expertise, and due process; (2) the state had expressed its interest in unified decisionmaking by creating a system on the state level to avoid multiple inconsistent adjudications, a system that would be disrupted by the exercise of jurisdiction by the federal courts; and (3) the issues sought to be adjudicated in federal court were largely ones of state law.

The facts here closely parallel those in *Burford.* New York has set up a comprehensive plan of regulation of insurance companies, with particularly detailed provisions concerning their rehabilitation and liquidation.[7] In doing so, New York has legislated on a matter of special state concern—so declared by the federal McCarran-Ferguson Act, 15 U.S.C. §§ 1011-15.

The New York courts have long been active partners in the state's regulatory plan. *See Motlow v. Southern Holding & Securities Corp.,* 95 F.2d 721, 724 (8th Cir.), *cert. denied,* 305 U.S. 609, 59 S.Ct. 68, 83 L.Ed. 388 (1938). Not only have they on a number of occasions reviewed in considerable detail the propriety of liquidators' decisions to grant or disallow claims, *see, e.g., Matter of New York Title & Mortgage Co.,* 277 N.Y. 66, 13 N.E.2d 41 (1938), *on later appeal* 257 App.Div. 19, 11 N.Y.S.2d 828 (1st Dept.), *rearg. den.,* 257 A.D. 822, 12 N.Y.S.2d 1021, *app. dis'd.,* 281 N.Y. 829, 24 N.E.2d 491 (1939); *In re Guardian Casualty Co.,* 161 Misc. 859, 293 N.Y.S. 142 (Sup.Ct., N.Y. Co. 1937), they have implemented the state's policy of unified adjudication by requiring all claims and challenges to be centralized in the court supervising the liquidation or rehabilitation.[8] *See, e.g., Knickerbocker Agency, Inc. v. Holz,* 4 N.Y.2d 245, 173 N.Y.S.2d 602, 149 N.E.2d 885 (1958); *General Accident Fire & Life Assurance Corp. v. Hawkins,* 115 A.D.2d 357, 495 N.Y.S.2d 398 (1st Dept. 1985); *Powell v. All City Insurance Company,* 74 A.D.2d 942, 426 N.Y.S.2d 135 (3d Dept.1980); *Matter of Allcity Insurance Company,* 66 A.D.2d 531, 413 N.Y.S.2d 929 (1st Dept.), *app. den.,* 48 N.Y.2d 629, 421 N.Y.S.2d 192, 396 N.E.2d 474 (1979); *Schenck v. Coordinated Coverage Corp.,* 50 A.D.2d 50, 376 N.Y.S.2d 131 (1st Dept.

---

**7.** These provisions are set forth in Article 74 of the New York Insurance Law. Sections 7408-15 of that Article constitute the New York enactment of the Uniform Insurance Liquidation Act. In summary, the statutory plan calls for the Superintendent to apply when he deems it appropriate to the Supreme Court in the judicial district in which the insolvent insurer is located for an order naming himself as its rehabilitator or liquidator, depending on whether he believes that the business should be run as a going concern or should be terminated. In either event, if the order is granted, the Superintendent takes control of the company's assets and conducts its business subject to the supervision of the court. *See* N.Y.Ins.L. § 7428.

**8.** Although our holding does not turn on the procedural details of how that court discharges its responsibilities, we are confident that LEICL's objection to the Superintendent's disallowance of its claim could be heard by motion in the liquidation proceeding itself. We were informed at oral argument that a retired New York State judge has been appointed as referee to hear and report to the court on the appropriate disposition of such matters, and this appears to be the common practice. *See generally In re Manhattan Casualty Co.,* 75 Misc.2d 357, 346 N.Y.S.2d 911 (Sup.Ct.N.Y.Co.1972); *In re National Surety Co.,* 176 Misc. 53, 26 N.Y.S.2d 370 (Sup.Ct.N.Y.Co.1941). In any event, it seems clear from *Prince Carpentry Inc. v. Cosmopolitan Mutual Insurance Company,* 124 Misc.2d 919, 479 N.Y.S.2d 284 (Sup.Ct.N.Y.Co.1984), that LEICL could obtain review by commencing in Supreme Court, New York County either a proceeding pursuant to N.Y. C.P.L.R. Art. 78 or a declaratory judgment action. As stated in note 5, *supra,* however, if LEICL's pursuit of its state remedies should show us to be wrong in our understanding that it has open to it adequate review by the liquidation court, LEICL is free to return to the district court.

**44**

1975); *In re Bean,* 207 App.Div. 276, 201 N.Y.S. 827 (4th Dept.1923); *In re National Surety Co., supra.* Indeed, that is the purpose of injunctions such as the one the liquidation court entered here. And while we do not read that injunction as barring this action of its own force, we do give it weight as an expression of state policy.

More significantly, the policy itself is an important one. As the court below recognized, the structure of the New York system serves the state's strong interest in centralizing claims against an insolvent insurer into a single forum where they can be efficiently and consistently disposed of. 640 F.Supp. at 272, *citing Fidelity Mortgage Investors v. Camelia Builders,* 550 F.2d 47, 53, 55 (2d Cir.1976), *cert. denied,* 429 U.S. 1093, 97 S.Ct. 1107, 51 L.Ed.2d 540 (1977); *see Ambiance, Inc. v. Commodore General Insurance Co.,* 553 F.Supp. 285, 289 (S.D.N.Y.1982). *Cf. Lumbermens Mutual Casualty Co. v. Connecticut Bank & Trust Co., supra* (abstaining so as to permit single inclusive determination concerning insurance coverage).

For all of these reasons, in *Levy v. Lewis,* 635 F.2d 960, 963–64 (2d Cir.1980), we applied *Burford* to abstain from deciding a case virtually identical to this one—a case in which the Superintendent as liquidator had disallowed a creditor's claim, and the creditor had brought a federal action in response.[9] We emphasized New York's "complex administrative and judicial system for regulating and liquidating domestic insurance companies," the expertise of the Superintendent, the necessity of marshalling the claims and assets in one place, and the "express federal policy of noninterference in insurance matters" embodied in the

McCarran-Ferguson Act.[10] All of these considerations are as relevant today as they were when *Levy* was decided, and persuade us that the same result should follow in this case as in that one. *See Mathias v. Lennon,* 474 F.Supp. 949, 954–55 (S.D.N.Y.1979) (abstaining on *Burford* grounds from deciding claims against Superintendent). This is particularly so since, in contrast to *Levy,* the current case presents no issues of federal law.

Because New York provides "a unified method for the formation of policy and determination of cases by the [Superintendent] and by the state courts," *Burford, supra,* 319 U.S. at 333–34, 63 S.Ct. at 1107, a method which would only be impaired by federal court intervention, the district court acted correctly in abstaining.[11]

Affirmed.

---

9. Before the federal case in *Levy* was brought, the Superintendent had moved in the state liquidation court for approval of his disallowance of the claim. As a result, in abstaining we relied also on grounds analogous to those in *Younger, supra.* In addition, we relied on *Colorado River,* a reliance which, for the reasons explained in Part I, may not survive *Moses H. Cone.*

10. Although not controlling, we note in this regard that by relegating claimants to a single proceeding centered in the state of domicile of the insolvent insurer, we further the state policies of uniformity that have led well over half of

the states to join New York in adopting the Uniform Insurance Liquidation Act. *See Emons Industries, Inc. v. Liberty Mutual Fire Insurance Company,* 545 F.Supp. 185, 189–91 (S.D.N.Y. 1982); *G.C. Murphy Co. v. Reserve Insurance Co.,* 54 N.Y.2d 69, 444 N.Y.S.2d 592, 429 N.E.2d 111 (1981).

11. In light of our holding, we find it unnecessary to address the Superintendent's other contentions, notably that the order below should be sustained as an exercise of the district court's discretion under the Declaratory Judgment Act, 28 U.S.C. § 2201.