**AMBIANCE, INC., Saul Cantor and Saul Cantor, Inc., Plaintiffs,**

v.

**COMMODORE GENERAL INSURANCE CO., Defendant.**

**No. 81 Civ. 3246.**

United States District Court, S.D. New York.

Dec. 17, 1982.

als.

Pollack & Kaminsky, New York City, for plaintiffs; Martin I. Kaminsky, Frederick P. Schaffer, John Halebian, New York City, of counsel.

Healy & Baillie, New York City, for defendant.

Shearman & Sterling, New York City, for Citibank, N.A.; Joanna Shally, New York City, of counsel.

Robert Abrams, Atty. Gen., of the State of N.Y., New York City, for Superintendent of the New York State Dept. of Ins.; David Pollack, Deputy Asst. Atty. Gen., New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

Plaintiffs, Ambiance, Inc., Saul Cantor, Inc. and Saul Cantor (collectively "Ambiance"), in an action commenced in this Court obtained a default judgment against the defendant Commodore General Insurance Company ("Commodore") in the sum of $818,613.15. Ambiance, in an effort to enforce the judgment, moves for an order to: (1) join Citibank N.A. ("Citibank") and the Superintendent of Insurance of the State of New York ("Superintendent") as parties in the action pursuant to Rule 19 of the Federal Rules of Civil Procedure; (2) compel Citibank to turn over to Ambiance all funds of Commodore held by Citibank, pursuant to Rules 69 and 71 of the Federal Rules of Civil Procedure; and (3) enjoin and stay a proceeding commenced by the Superintendent in the Supreme Court of the State of New York to obtain possession of Commodore's assets, including its funds on deposit at Citibank, and for his appointment as conservator of Commodore.

Defendant Commodore is a Hong Kong corporation which conducted an excess or surplus lines insurance business in the United States, including New York State. Commodore deposited $550,000 with Citibank "as security for its American insureds and reinsureds ... and to become eligible as an excess or surplus lines insurer in various Commonwealths, Districts or States of the United States of America."[1] On or about December 11, 1981, Commodore was placed in liquidation by the Hong Kong authorities; the Official Receiver of Hong Kong is in charge of its liquidation. Commodore is insolvent and unable to meet its insurance obligations. The Citibank fund is the only asset in the State available to satisfy the claims of Commodore creditors and insureds.

On May 26, 1981, Ambiance instituted this action against Commodore for breach of a marine insurance contract by failing to pay benefits due to Ambiance. On June 17, 1981, this Court granted Ambiance's motion for an order of attachment against the Citibank fund. The order was entered on June 24, 1981, and duly served on Citibank. On February 1, 1982, this Court granted plaintiff's motion for a default judgment against Commodore in the sum of $818,613.15, which judgment was entered on February 2, 1982. Paragraph 5 of the judgment provides that "[p]laintiff shall have immediate execution upon the funds ... at Citibank ... presently held under this Court's Order of Attachment dated June 24, 1981 ...." On February 4, 1982, the United States Marshal served a writ of execution on Citibank.

Citibank, however, refused to release the funds to Ambiance. During the seven months between this Court's order of attachment and its default judgment, Citibank was apprised that other parties also claimed an interest in the Commodore fund. These other parties, and the actions taken by them, are as follows: On July 14, 1981, another Commodore insured, Rattlesnake Windjammer Ventures, Inc. ("Rattlesnake") obtained a judgment in the amount of $98,963.20 against Commodore and others in the Superior Court of the State of New Jersey. On January 6, 1982, Rattlesnake filed the judgment with the County Clerk of New

---

1. Trust Agreement at 1.

York County and delivered an execution to the Sheriff of New York County with notice to levy on the Commodore fund held by Citibank. Pursuant thereto, on January 11, 1982, the Sheriff levied upon the Commodore funds held by Citibank and demanded payment to satisfy the Rattlesnake judgment. Upon Citibank's refusal to pay because of the Ambiance attachment and other outstanding claims and attachments, Rattlesnake, upon a claim that its right to levy and collect from the fund held by Citibank was superior to that of Ambiance, commenced in the New York State Supreme Court on January 27, 1982 a turnover proceeding against Citibank and Ambiance; it also sought a declaration of priority over Ambiance. In response, Citibank filed an interpleader petition on February 17, 1982, naming other parties who were asserting claims with respect to the fund held by Citibank. These included Continental Garage Management Corporation ("Continental"), Grossman Garage Management Corporation ("Grossman") and American Federal Group, Ltd. ("American Federal").

On September 4, 1981, Continental and Grossman sued Commodore and American Federal in New York Supreme Court on a garage keeper's liability insurance policy and an automobile damage insurance policy issued to them by Commodore. American Federal was the excess line broker who placed the insurance for Continental and Grossman through Commodore's agent. Simultaneously, the two garage corporations and American Federal moved for an order of attachment against Commodore. These motions were granted on default, and an order of attachment was signed on October 21, 1981, directing the Sheriff to levy on Commodore's property up to $500,000. On December 7, 1981, the Sheriff served the order on Citibank. Citibank, in the interpleader action, in addition to naming the two garage corporations and American Federal, also named as a respondent the official Hong Kong receiver of Commodore since by

letter dated December 14, 1981, he had requested Citibank to remit to him any balance in the Commodore account. The Citibank interpleader also sought a determination by the State Supreme Court of the rights of the respective claimants to the fund.

The final demand for the fund came on February 19, 1982, when the Superintendent commenced a proceeding pursuant to Article XVI of New York's Insurance Law in New York Supreme Court. The Superintendent sought an order designating him conservator of Commodore's assets and directing that the Citibank fund be turned over to him. This proceeding was consolidated with the Rattlesnake turnover action, the Citibank interpleader action, and motions made by Continental, Grossman and American Federal to extend their time to perfect the levy on their respective attachments against Commodore. Ambiance opposed the applications of all the other parties on the ground, inter alia, that the State Court could not or should not exercise jurisdiction over the fund because this Court had previously directed its disposition. By decision dated July 8, 1982, the State Court granted the Superintendent's motions and denied all the other applications.[2] The State Court noted that the claims against Commodore totalled $2,393,576.20, and that Commodore's only known New York asset was the fund.[3] The Court concluded that "[w]hatever the merits of the contested issue of priorities raised by some of the judgment claimants," the affairs of the insolvent Commodore require the appointment of the Superintendent as conservator of its assets for the protection of all creditors and claimants under the New York Insurance Law and applicable regulations.[4] An order to that effect was entered on September 21, 1982. Ambiance, on October 25, 1982, appealed to the Appellate Division, First Department, on the ground that the State Court should not have decided to exercise jurisdiction in view of this Court's prior

**2.** In the matter of the *Application of Albert B. Lewis,* No. 40581/82 (N.Y.Sup.Ct. July 8, 1982).

**3.** *Id.* slip op. at 3.

**4.** *Id.* at 5–6.

direction with respect to the Citibank fund. The appeal is pending. However, in the interim, in August 1982, Ambiance instituted the present motion.

## THE LAW

 Ambiance and the Superintendent vigorously contest whether the injunction Ambiance seeks comes within either of the last two exceptions listed in the Anti-Injunction Act, 28 U.S.C., section 2283, which provides:

A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, *or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.*[5]

However, it is unnecessary to decide the issue, since it is undisputed that even if either exception vests the Court with authority to issue an injunction, whether or not to grant the relief is within the Court's discretion.[6] In *Mitchum v. Foster* the Supreme Court made it unmistakably clear that "principles of equity, comity and federalism ... must restrain a federal court when asked to enjoin a state court proceeding."[7] In this case, the Court is convinced that those principles counsel against enjoining the State Court conservator proceeding.

When this Court granted Ambiance's application permitting execution upon the attached Commodore fund, it was not aware of all the other competing claims asserted against the fund.[8] Inasmuch as the fund deposited by Commodore pursuant to New York law was for the benefit of all Commodore policy holders and beneficiaries in the United States, it would be inequitable to order payment of the entire fund to one claimant to the exclusion of other claimants who were also diligent in seeking to enforce their claims.

Ambiance, however, urges that it is entitled to have its judgment satisfied by the funds which it attached at Citibank upon a contention that, except for its attachment, the funds might not be available for distribution to any claimant since somehow the fund would have been absconded with and placed beyond the jurisdiction of this Court. The contention is without substance,[9] as is its further argument that the other claimants and the Superintendent "are johnny-come-latelies who now want to appropriate Ambiance's effort for themselves," and that any other distribution would be "unfair and unwarranted."[10] To the contrary, it would be unfair and unwarranted for plaintiffs to obtain the sole asset of the insolvent insurance company to the exclusion of other creditors. The fact is that Rattlesnake, Grossman, Continental and American Federal were also diligent in pursuit of assets to satisfy their claims and judgments. In any event, equity does not require that the rewards must necessarily go to the swift.[11]

Ambiance and each of the other claimants have the opportunity to establish their respective claims to priority in the New York proceeding. There is no reason to doubt that whatever rights inure to Ambi-

5. Emphasis added.

6. *See Mitchum v. Foster,* 407 U.S. 225, 243, 92 S.Ct. 2151, 2162, 32 L.Ed.2d 705 (1972); *Lion Bonding Co. v. Karatz,* 262 U.S. 77, 89, 43 S.Ct. 480, 484, 67 L.Ed. 871 (1923); *Commonwealth Edison Co. v. Gulf Oil Corp.,* 541 F.2d 1263, 1274 (7th Cir.1976).

7. 407 U.S. 225, 243, 92 S.Ct. 2151, 2162, 32 L.Ed.2d 705 (1972).

8. Although the Rattlesnake turnover proceeding had been instituted on January 27, 1982, this was not called to the Court's attention, nor was it advised of other outstanding claims or attachments when this Court signed its order of February 1, 1982. The record does indicate that a letter dated February 1, 1982 was hand delivered to the Court by Citibank advising of the Rattlesnake claim, but whether this was received before or after the Court signed the order on February 1, 1982 does not appear.

9. Citibank, as noted, has resisted the efforts of all parties to obtain the fund under their attachments and judgments upon a claim that the fund constitutes an irrevocable trust under an agreement with Commodore.

10. Plaintiff's Brief in Support of Turnover Motion at 5.

11. *Cf. Caldwell-Clements, Inc. v. McGraw-Hill Pub. Co.,* 11 F.R.D. 156, 158 (S.D.N.Y.1951).

ance by virtue of this Court's judgment will be respected and enforced in that proceeding which is intended for the protection of the rights of all interested parties.

Moreover, principles of comity and federalism require this Court not to interfere with the special conservation machinery established by New York State law to protect all creditors and claimants in the event that foreign insurance companies doing business within the state become insolvent.[12] New York State has a strong and proper interest in regulating the affairs of defunct insurers. As the New York Court of Appeals has said:

> Article XVI of the Insurance Law (§§ 510–546), insofar as it relates to the liquidation of insolvent insurance companies, is intended to and does furnish a "comprehensive, economical, and efficient method for the winding up of the affairs" of such insurance companies by the Superintendent of Insurance. . . . Those provisions of the Insurance Law ". . . furnish a complete procedure for the protection of the rights of all parties interested". . . [T]he dominant purpose of article XVI . . . is the preservation . . . of . . . [a] company's assets to the end that the interests of all its creditors, policyholders, stockholders and the public will be subserved.[13]

In sum, the injunction sought by Ambiance would interfere with a legitimate concern of New York State and create unnecessary friction in our federalist system—unnecessary because Ambiance's interest will be adequately protected in the state conservator proceeding, Thus, as a matter of fairness to all creditors and claimants and in the interest of comity, this Court declines to stay the proceeding and order a turnover of the Citibank fund to Ambiance.

The motion is denied in all respects.

---

**12.** *Cf. Pennsylvania v. Williams,* 294 U.S. 176, 182–86, 55 S.Ct. 380, 383–85, 79 L.Ed. 841 (1935); *Penn General Casualty Co. v. Pennsylvania,* 294 U.S. 189, 197, 55 S.Ct. 386, 389, 79 L.Ed. 850 (1935); 1A Moore's Federal Practice ¶ 0.217 (2d ed. 1981).

**13.** *Knickerbocker v. Holtz,* 4 N.Y.2d 245, 250–53, 173 N.Y.S.2d 602, 606–09, 149 N.E.2d 885, 888–91 (1958) (citations omitted). *Cf. Levy v. Lewis,* 635 F.2d 960, 963–64 (2d Cir.1980); *Superintendent of Ins. v. Bankers L. & Cas. Co.,* 401 F.Supp. 640, 647 (S.D.N.Y.), *aff'd,* 526 F.2d 586 (2d Cir.1975).