Dissenting Opinion by
POLLACK, J.
I. Introduction
Of fundamental importance in this case is the distinction between ownership of an insurer, represented by title to company stock, and ownership of the insurer’s assets, i.e. the insurer’s estate. Stock that represents ownership of an insurer is "not part of the insurer’s estate. The two letters central to this case, from Appellant Investors Equity Life Holding Company’s (IELHC) to the Hawaii Insurance Commissioner, appointed by the circuit court as liquidator (Liquidator), present only an assertion of title in Investors Equity Life Insurance Company of Hawaii, Ltd.’s (IEL) stock and suggest that a consequence of such title would be an entitlement to any remaining surplus following distribution to all claimants and creditors, i.e. the residual surplus of IEL’s estate.
The majority correctly determines that IEL’s stock is not part of IEL’s estate, and thus IELHC’s assertion of title in IEL’s stock did not constitute an independent claim against IEL’s estate. Majority at 68, 346 P.3d at 137. Further, I assume for the purpose of discussion that the majority correctly determines that the Liquidator has authority to accept and determine a claim in “substantial” compliance with proof of claim requirements of Hawaii’s Insurers Supervision, Rehabilitation and Liquidation Act (ISRLA). However, I respectfully disagree with the majority’s holding that IELHC’s two letters to the Liquidator and a California lawsuit substantially conformed to the proof of claim requirements, and thus I also disagree with the majority’s conclusion that the circuit court, sitting in liquidation proceedings under the ISRLA as the Liquidation Court, did not abuse its discretion in affirming that the two letters and the lawsuit constituted a claim against the estate of IELHC. Majority at 69, 346 P.3d at 138.
I additionally conclude that the Liquidation Court’s jurisdiction to make distributions of the estate of an insolvent insurer does not extend to the determination of ownership of assets outside the insolvent insurer’s estate. I therefore disagree with the majority’s conclusion that the Liquidation Court had subject matter jurisdiction over IELHC’s challenge asserting ownership in IEL’s stock.
Finally, I disagree with the majority’s holding that the Liquidation Court did not abuse its discretion in determining that IELHC’s purported “claim” is time barred. Majority at 75, 346 P.3d at 144. The Liquidator’s broad discretion to accept late filing of claims depends upon the prejudicial effect of the claim upon “the orderly administration of the liquidation.” Hawaii Revised Statutes (HRS) §§ 431:15-325(b)(l), (d) (2005). As a stockholder and “claimant” with the lowest possible priority, IELHC’s purported “claim” cannot affect the ordei’ly administration of the liquidation process in any conceivable way; therefore, as a matter of law, IELHC should not be time barred from pursuing a claim to the residual estate if it successfully asserts title in IEL’s stock.
For these reasons, I would vacate the Liquidation Court’s Findings of Fact, Conclusions of Law and Orders entered on October 6, 2010, and remand the case for dismissal.
II. Discussion
A. The Liquidation Court’s incorrect determination that IELHC had filed a claim
The majority concludes that under the ISRLA’s proof of claim provision, “the liquidator may accept a claim which is in substantial compliance with the proof of claim elements of HRS § 431:15-326.”[1] Majority at *77 67, 346 P.3d at 136. Under the majority’s analysis, the first step in the Liquidator’s adjudication of a claim is to determine whether the claim is in compliance with HRS § 431:15-326(a) (2005). If it is, the Liquidator can either accept the claim, or follow the disputed claim provision to deny the claim. See HRS § 431:15-329 (2005). If the claim is not in compliance, but manifests an intention to file a claim against the estate, the Liquidator must determine whether the communication substantially complies with the proof of claim provision. Majority at 67, 346 P.3d at 136. The majority’s analysis, however, would appear to allow the Liquidator to label nearly any communication regarding title to stock in an insolvent insurer as an asserted claim. This implication is an unwarranted expansion of the Liquidator’s statutory authority.
1. Transformation of communications into claims
Despite the large number of states (at least twenty-six) that have adopted insurance insolvency provisions that are substantially similar to the ISRLA,[2] this case “is particularly unusual because IELHC attests that its communications did not constitute a claim.” Majority at 62, 346 P.3d at 131. The majority acknowledges, “Courts in other states have occasionally considered whether a purported claim met the state’s statutory proof of claim requirements, but in all of those cases the purported claimant argued that their communications did constitute a claim.” Majority at 63, 346 P.3d at 132. Thus, in light of IELHC’s disavowal, there is no precedent for the majority’s holding that the letters from IELHC constitute a claim on the estate of IEL.
A party has every right not to file a claim. When it is the claim itself that gives the Liquidator jurisdiction, the Liquidator should not assume jurisdiction by transforming assertions of ownership of the insurer into claims. Thus, the Liquidator does not have authority to transform a communication that does not substantially comply with the requirements of HRS § 431:15-326 into a “claim” and to then deny the “claim.”
2. IELHC’s letters failure to substantially conform to HRS § 431:15-326
Even if the Liquidator had authority to determine that a communication that did not manifest intent to assert a claim could in fact constitute a claim, the letters from IELHC did not substantially conform to the proof of claim requirements. On April 23, 2008, *78 IELHC wrote a letter to the Liquidator (First Letter).[3]
The First Letter begins by declaring an intent to “recover[ ]” IEL stock and gives the reason a shareholder would want the stock of a liquidated company: IELHC believed that the estate of IEL contained significant value. The next two paragraphs present arguments that the Liquidator’s seizure of IEL stock was contrary to law.[4] In the fifth paragraph, the First Letter states an assumption that Classes 1-8 claimants have been fully paid or protected. The First Letter then announces a statement of legal and public policy:
As a matter of equity and public policy, the Holding Company as shareholder, or legal or equitable owner, of the stock of IEL should receive distribution of the remaining surplus of the estate. Any escheat of such remaining surplus to the State of Hawai'i, and agency thereof, or the general fund would constitute a further constitutional taking, and an illegal tax as well.
(Emphasis added). Thus, the First Letter articulates a general policy, allegedly in accordance with the United States and the Hawai'i Constitutions, that shareholders or equitable owners “should” receive any residual surplus after all creditors have been satisfied.[5]
IELHC’s characterization of the public policy in regard to a residual surplus of an insolvent insurer’s estate is in accord with the ISRLA. The Act provides for distribu *79 tion of claims according to class. HRS § 431:15-332(9) (2005).[6] The lowest priority class, Class 9, is “the claims of shareholders or other owners.” Id. Every other class of claimant must be paid in full or adequate funds retained for the payment before Class 9 claims receive any payment. Id. The. ISR-LA also states the following:
All unclaimed funds subject to distribution remaining in the liquidateoris hands when the liquidator is ready to apply to the court for discharge, including the amount distributable to any creditor, shareholder, member, or other person who is unknown or cannot be found, shall be deposited with the director of finance, and shall be paid without interest except in accordance with section 431:15-332 to the person entitled thereto or the person’s legal representative upon proof satisfactory to the director of finance of the person’s right thereto.
HRS § 431:15-335(a)(2005) (emphases added).[7] Thus, taking HRS § 431:15-332’s lowest priority class of claimants, consisting of shareholders or other owners, together with HRS § 431:15-335’s express requirement to hold funds subject to discharge for shareholders, including shareholders or owners that are “unknown or cannot be found,” there is an inherent mandate that the unclaimed funds, if any, of a liquidated insurance organization should be returned to the owners or shareholders of the liquidated company.
Returning to the First Letter, the operative paragraph demands all outstanding shares of IEL:
Therefore, it is respectfully demanded that the Honorable J.P. Schmidt, Insurance Commissioner of the State of Hawañ deliver [IELHC] all authorized, issued, and outstanding shares of stock of IEL and any certificates representing said shares.
As the express demand of the First Letter, this operative paragraph should be given controlling weight. Thus, the only demand that can be discerned from the First Letter is for the remaining IEL shares. However, company stock is not a part of the estate; thus, a demand for stock is not a claim against the estate of IEL.
That, a demand for stock is not a claim against an estate of insurer is made clear by the majority in its discussion of a second letter from IELHC to the Liquidator on July 2, 2008 (the Second Letter). The majority observes that the Second Letter supplements the First Letter’s arguments in support of IEHLC’s ownership of IEL’s stock and does not contain a specific claim against IEL’s estate. Majority at 68, 346 P.3d at 137. The majority then makes it clear that a demand for stock is not a claim against the estate: *80 “IELHC’s assertion of title in IEL Stock was not a claim against IEL’s estate because IEL’s stock was not part of the estate.” Majority at 68-69, 346 P.3d at 137-38. Thus, neither the First Letter nor the Second Letter asserts a claim upon the estate of IEL by way of its assertion of title in IEL’s stock.
Further, an assertion of ownership and a claim to all shares and the residual estate by a person claiming to be a shareholder or owner is fundamentally different than claims from all other classes of creditors, because it is inherent in such an assertion that all other creditors have been satisfied. See HRS § 431:15-332 (“Every claim in each class shall be paid in full or adequate funds retained for the payment before the members of the next class receive any payment.”); see supra note 1. Protection is no longer needed for “insureds, claimants, and creditors,” because, by definition, all distributions have been made to any insured, claimants, or creditors before any distribution is made to owners or shareholders. HRS § 431:15—101(d) (2005) (defining the purpose of the ISRLA to protect insured, claimants and creditors).[8]
Once only the residual estate remains, the sole remaining purpose of the ISRLA is “minimum interference with the normal prerogatives of the owners and managers of insurers.” Id. Thus, when there are no further “insured, claimants, or creditors,” it plainly contradicts the purpose of the ISRLA to interfere with the normal prerogatives of owners. It follows that any determination by the Liquidator that a communication does or does not amount to a claim must comport with the intent of the ISRLA to protect “the interests of insureds, claimants, creditors, and the public generally, with minimum in-terferenee with the normal prerogatives of the owners and managers of insurers.” Id.
The majority’s conclusion that IELHC asserted a claim rests on its analysis of the First Letter in conjunction with its interpretation of HRS § 431:15-326.[9] In particular, the majority’s conclusion rests on its determination that the First Letter satisfies just three of nine requirements under HRS § 431:15-326(a). See supra note 1.
In regard to the unsatisfied elements, the majority acknowledges the First Letter was not signed by the “claimant,” did not provide the address of the “claimant,” did not provide a “copy of the written instrument which is the foundation of the claim,” and did not state that the “sum claimed was justly owed.” Majority at 68, 346 P.3d at 137; see HRS § 431:15-326(a), (a)(4), (a)(6), (a)(7). Thus, the majority concedes that four of the nine elements of HRS § 431:15-326 were not satisfied.
The majority also notes that the First Letter did not identify the security for the “claim” and did not state any “payments made on the debt.” Majority at 67, 346 P.3d at 136. The majority reasons, “Because there was no security on the claim and there were no payments on the debt, those proof of claim elements are inapplicable.” Majority at 68, 346 P.3d at 137; see HRS § 431:15-326(a)(2) and (a)(3). However, the majority appears to overlook the fact that there was no security on the “claim” and no payments on the “debt” because there was no indebtedness by IEL to IELHC on which IEL could have made “payments” or on which IELHC could have asserted a security interest; the majority seems to envision that a claimant could legitimately assert a claim against the *81 estate of a liquidated insurer without an antecedent debt. Simply concluding these elements are “inapplicable” discounts the fundamental difference between stock ownership and a debt. Equitable ownership of a company is fundamentally distinct from a secured claim: stock is not a debt and nothing is “owed” to the owner on account of an equitable stake.[10] The fact that the elements indicated by HRS § 431:15-326(a)(2) and (a)(3) are missing from the First Letter signals that the assertion made by the First Letter is one of equitable ownership and not a claim against the estate. Thus, the majority does not dispute that six of the nine elements of HRS § 431:15-326 are not satisfied, although the majority would qualify that deficiency by contending that two elements are “inapplicable.”
The majority asserts that the letter “was signed by the claimant’s attorney,” majority at 68, 346 P.3d at 137, in apparent partial satisfaction of the requirement that the proof of claim shall include “the name and address of the claimant and the attorney who represents the claimant, if any.” HRS § 431:15-326(a)(7). The letter, of course, also included the address of IELHC’s counsel. However, the name and address of counsel is fully unremarkable as they are expected features of any legal communication. Thus, the partial satisfaction of this element does not substantively indicate that a claim has been made on the estate.
Ultimately, the majority’s conclusion rests on its determination that the First Letter provides the “particulars of the claim including the consideration given for it,” and the First Letter states a “right of priority of payment or specific right asserted by the claimant.” Majority at 67, 346 P.3d at 136; see HRS § 431:15-326(a)(l), (5).
In regard to the “particulars of the claim,” the majority states that “IELHC sought ‘distribution of the remaining surplus of the estate.’ ” Majority at 67, 346 P.3d at 136 (emphasis added) (quoting First Letter). This misapprehends the First Letter as seeking distribution of IEL’s surplus based on its status as IEL’s sole shareholder. The First Letter actually reads, “As a matter of equity and public policy, the Holding Company as shareholder, or legal or equitable owner, of the stock of IEL should receive distribution of the remaining surplus of the estate.” (Emphasis added). Thus, when the quoted language of the majority is read in context with the verb “should” and not “sought,” this statement is clearly indicative of a general policy statement and is not a claim.
Further, the “claim” by the First Letter is far from “particular”; rather, the letter refers to the “remaining surplus” and “all authorized, issued, and outstanding shares of IEL,” but does not identify a sum certain owed to IELHC or specifically identify assets in which IELHC purportedly asserted its claim. Additionally, there is no discussion of consideration in the First Letter. Thus, the First Letter’s identification of the “particulars of the claim” and “the consideration given for it” are insufficient to establish a claim.
The majority also states that “the [First Letter] specified IELHC’s priority of payment by specifying that IELHC’s claim was based on its status as a shareholder,” in order to find that the letter satisfied HRS § 431:15-326(a)(5). Majority at 67, 346 P.3d at 136. However, establishing IELHC’s status as shareholder is a necessary prerequisite for its demand for delivery of stock; stock that IELHC asserts it owns. A demand for shares to be delivered is not a claim on the estate, majority at 68-69, 346 P.3d at 137-38; therefore, an assertion of shareholder status cannot establish that a claim has been made. Further, an assertion of ownership rights in a residual estate or the shares of IEL is not a statement of “any right of priority of payment or specific right asserted by the claimant,” HRS § 431:15-326(a)(5), because an owner or shareholder has, by definition, no priority whatsoever. *82 All other possible claimants have higher priority, and an assertion of ownership of an estate is not a claim against the estate. HRS § 431:15-332; see supra note 6.
Thus, out of nine elements of HRS § 431:15-326, only one has been partially satisfied. The majority does not dispute that six elements were not satisfied, and its analysis of two elements is flawed as the First Letter does not include “particulars of the claim” or “the consideration given for it”; further, the letter’s statement of a “right of priority of payment” is at least as much in accordance with its status as shareholder as it is with IEL’s alleged status as claimant. Taken together, the conclusion of the majority that “The Liquidator was able to identify who submitted the claim, the amount of the claim, and the grounds of the claim,” majority at 68, 346 P.3d at 137, is unpersuasive.
The majority’s determination that the First Letter constitutes a claim on the estate of IEL, majority at 66-68, 346 P.3d at 135-37, does not discuss or evaluate the express demand made in the operative paragraph of the First Letter. The majority’s analysis does not indicate why it seemingly discounts this paragraph or why the implied intent supplied to the First Letter by the majority should prevail over its expressed intent.
The majority also points to references within the First Letter to “the estate” of IEL to conclude the following: “a reading of the letter such that it is understood to assert rights to both assets within the estate and IEL stock appears most.accurate and persuasive.” Majority at 67 n. 32, 346 P.3d at 136 n. 32. However, the majority gives a meaning to the First Letter’s use of the term “estate” that the letter did not intend. For instance, the majority suggests that the First Letter’s concern that the Liquidator misrepresented IEL’s financial condition “reveal[s] a clear intent to assert rights to assets within the estate.” Id. (emphasis added).
While HRS Chapter 431, Article 15 does not define “estate,” see HRS § 431:15-103 (2005), it does use the term seventeen times.[11] In each instance, the term “estate” refers, in general, to the total assets of the insurer; that is, “[t]he amount, degree, nature, and quality of a person’s interest in land or other property.” Black’s Law Dictionary 664 (10th ed. 2014). Thus, the term “estate” as it is used in the ISRLA refers generally to a body of property defined by common ownership. The First Letter’s use of “estate,” particularly in respect to its concern that IEL was significantly undervalued by the Liquidator, was consistent with the ISRLA’s use of the term. Therefore, the majority’s reliance upon the term “estate” from the First Letter to infer the existence of a claim by the IELHC is inconsistent with the use and meaning of this term throughout the ISRLA.
Further, in the context of this case, construing the use of “estate” in the First Letter to infer that a claim has been made is contrary to the purpose of the ISRLA to act with “minimum interference with the normal prerogatives of the owners and managers of insurers.” HRS § 431:15-101(d). Thus, the majority’s overly expansive definition of “estate,” used to shoehorn an implied meaning into the First Letter, is contrary to the purposes of the ISRLA.
Thus, the decision of the Liquidation Court that the First and Second Letters and the California Lawsuit, taken together, constituted a claim against the estate of IEL was incorrect.[12]
*83 B. Limited jurisdiction of the Liquidation Court
The jurisdiction of the Liquidation Court is defined in the negative:
No court of this State has jurisdiction to entertain, hear or determine any complaint praying for the dissolution, liquidation, rehabilitation, sequestration, conservation, or receivership of any insurer, or praying for an injunction or restraining order or other relief preliminary to, incidental to, or relating to that type of proceedings other than in accordance with this article.
HRS § 431:15—104(c) (2005)(emphasis added). Thus, no court has any jurisdiction to hear any matter related to the dissolution, liquidation, etc., of any insurer, except in accordance with the ISRLA.[13] The Liquidation Court’s jurisdiction is thus limited by the ISRLA.
As a court of limited jurisdiction, the Liquidation Court’s subject matter jurisdiction involves two main functions. First, the Liquidation Court grants the order initiating proceedings for liquidation or rehabilitation of an insurer. HRS § 431:15-307(a) (2005). Second, once the order of liquidation is granted, the Liquidation Court retains “general supervision.” Id. The purpose of the court’s supervision is the “marshaling and preserving the assets [of the insolvent insurance company’s estate] and then distributing, them to the proper claimants. It is not for the purpose of depriving a claimant of any rights.” In re Guardian Cas. Co., 161 Misc. 859, 293 N.Y.S. 142, 145 (N.Y.Sup.Ct.1937).
As part of its purpose of general supervision, the Liquidation Court also adjudicates disputed claims. The Liquidator may deny claims. HRS § 431:15-329(a). When the Liquidator denies a claim and the claimant objects to the Liquidator’s denial, “the liquidator shall ask the court for a hearing as soon as practicable.” Id. “The matter may be heard by the court or by a court-appointed referee who shall submit findings of fact along with such referee’s recommendations.” Id.
Thus, the legislature restricted the Liquidation Court’s authority to make or adjudicate distributions (i) of claims against the insurer’s estate and (ii) in the priority provided by that statute. HRS § 431:15-332 (“The priority of distribution of claims from the insurer’s estate shall be in accordance with the order in which each class of claims is herein set forth.”) (emphasis added). However, making distribution of claims from the estate, pursuant to HRS § 431:15-332, and determining ownership of the insurer’s estate are independent, unrelated processes. There is no statutory conduit for an assertion of ownership to be heard by the Liquidation Court as there is for disputed claims.
Further, there is no grant of jurisdiction to the court to (i) determine matters unrelated to the “dissolution, liquidation, rehabilitation, sequestration, conservation, or receivership of any insurer” or (ii) grant “an injunction or restraining order or other relief’ that is not “preliminary to, incidental to, or relating to” such dissolution, liquidation, rehabilitation, sequestration, conservation, or receivership. See HRS §§ 431:15-104(c). Thus, the Liquidation Court does not have jurisdiction to resolve a claim of ownership of assets not in the estate of an insurer under the supervision of the court.
An analogous procedure to address the issue of a party alleging ownership in the insurer and asserting a resulting entitlement in the insurer’s residual estate is the approach of the ISRLA’s special claims and third party claim provision.[14] HRS *84 §§ 431:15-327 (2005), 431:15-328 (2005). The ISRLA allows for claims that are contingent upon the adjudication of a claim outside the Liquidation Court: “The claim of a third party which is contingent only on first obtaining a judgment against the insured shall be considered and allowed as if there were no such contingency.” HRS § 431:15-327(a). When a third party asserts such a claim, the Liquidator must assess the value of the potential claim against the estate, report it to the Liquidation Court, and withhold appropriate funds to cover a potential future judgment against the insured. HRS § 431:15-328(c). However, it is clear that the Liquidation Court lacks subject matter jurisdiction over third party claims against the insured because the statute also provides that “the liquidator shall withhold any dividends payable on the claim, pending the outcome of litigation.” Id. (emphasis added).
Further, denying the alleged owner the right to pursue an assertion of ownership in a proper forum conflicts with the purpose of ISRLA. The purpose of the ISRLA, which “shall be liberally construed,” is to protect “the interests of insureds, claimants, creditors, and the public generally, with minimum interference with the normal prerogatives of the owners and managers of insurers.” HRS § 431:15-101(c)-(d) (emphasis added). Thus, although owners and shareholders[15] of the insurer are absent from the list of protected interests in insolvency proceedings, the Liquidator must mitigate any adverse effect on owners when administering these proceedings. See supra note 8.
As noted, shareholders and owners are the lowest priority claimants, before whom all other claimants must be paid in full. HRS § 431:15-332(9). However, any surplus should be paid to a legitimate recipient. “All unclaimed funds subject to distribution remaining in the liquidator’s hands when the liquidator is ready to apply to the court for discharge, including the amount distributable to any ... shareholder ... or other person who is unknown or cannot be found ... shall be paid ... to the person entitled .... ” HRS § 431:15-335(a) (emphasis added).[16] Thus, even when claims have not been submitted by the owner or shareholder, if there are remaining funds in the estate after the claims of Classes 1-8 have been satisfied or accounted for, the Class 9 claimants (allegedly such as IELHC) are “entitled” to the surplus funds.[17] A determination of ownership in the insurer is therefore dispositive as to an entitlement to the residual surplus of the insurer’s estate; a concomitant prerogative of ownership is minimal interference by the Liquidator, especially when the interests of insured, claimants, and creditors have been satisfied.
The Liquidation Court’s lack of jurisdiction to determine the validity of an assertion of ownership to stock of an insolvent insurer is supported by federal bankruptcy law.
1. Federal bankruptcy law “related to” tests
The ISRLA provides “related to” jurisdiction.
No court of this State has jurisdiction to entertain, hear or determine any complaint praying for the dissolution, liquidation, rehabilitation, sequestration, conservation, or receivership of any insurer, or praying for an injunction or restraining order or other *85 relief preliminary to, incidental to, or relating to that type of proceedings other than in accordance with this article.
HRS § 431:15-104(e) (emphasis added). Based on federal bankruptcy law, which is analogous to insurance insolvency proceedings and can be used for guidance, a determination of ownership rights or status in the residual estate is not “related to” a claim against an insolvent insurance company subject to insolvency proceedings. See Garamendi v. Exec. Life Ins. Co., 17 Cal.App.4th 504, 21 Cal.Rptr.2d 578, 585 (1993) (“[I]nsol-vency proceedings respecting [an insurer] are analogous to proceedings in bankruptcy. We thus look to federal bankruptcy law for guidance.”).
Under federal bankruptcy law, district courts “have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.” 28 U.S.C.A. § 1334(b) (emphasis added). Federal bankruptcy courts have developed two different yet similar tests to determine the scope of “related to” insolvency proceedings: the Seventh Circuit test, and a test from Pacor Inc. v. Higgins, 743 F.2d 984 (3rd Cir.1984) that has been adopted by all other federal jurisdictions.[18]
The Supreme Court cited the Pacor and Seventh Circuit tests and explicitly agreed with the view in Pacor that “related to” jurisdiction “cannot be limitless.” Celotex Corp. v. Edwards, 514 U.S. 300, 308, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995). The Court recognized the two approaches are only “slightly different,” and without adopting or stating a preference to either test, observed that “whatever test is used, these eases make clear that bankruptcy courts have no jurisdiction over proceedings that have no effect on the estate of the debtor.” Id. at 308 n. 6, 115 S.Ct. 1493 (emphasis added).
a. The Pacor test
Under Pacor, the “related to” bankruptcy proceedings test is “whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.” Pacor, 743 F.2d at 994. “[T]he proceeding need not necessarily be against the debtor or against the debtor’s property.” Id. An action is “related to” the bankruptcy proceeding “if the outcome could alter the debtor’s rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impact the handling and administration of the bankruptcy estate.” Id. (emphasis added). Although subject matter jurisdiction is broad under the “related to” formulation, “there must be some nexus between the ‘related’ civil proceeding” and the insolvency proceedings for subject matter jurisdiction to exist. Id. “An action that is merely a precursor to an indemnification claim against a debtor does not establish exclusive ‘related to’ jurisdiction in the bankruptcy court.” St. John Med. Ctr. v. State ex rel. Dep’t of Soc. & Health Servs., 110 Wash.App. 51, 38 P.3d 383, 389 (2002) (quoting Pacor, 743 F.2d at 995) (adopting the Pacor test for insurance insolvency proceedings) (emphasis in original).[19]
Applying the Pacor test to this case, and based on the statutory scheme in HRS §§ 431:15-332 and 431:15-335 discussed above, it is clear that any action that determines ownership in the insurer has no conceivable effect on the insurer’s estate because the outcome of such an action has no effect on the insurer’s rights, liabilities, op *86 tions, or freedom of action, and it does not impact in any way on the handling and administration of the insurer’s estate. Thus, under the Pacor test, the Liquidation Court lacked subject matter jurisdiction to determine IELHC’s assertion of title in IEL’s stock as a matter “related to” a claim.
b. The Seventh Circuit test
The Seventh Circuit “related to” bankruptcy proceedings test is whether the dispute “affects the amount of property for distribution [i.e., the debtor’s estate] or the allocation of property among creditors.” Matter of Mem’l Estates, Inc., 950 F.2d 1364, 1368 (7th Cir.1991) (alteration in original) (emphases added) (quoting In re Xonics, Inc., 813 F.2d 127, 131 (7th Cir.1987)).
The Seventh Circuit test is narrower than the Pacor test. Applying it to this case, it is clear that a determination of ownership in the insurer has no effect on the amount of property for distribution from the insurer’s estate, nor does it affect the allocation of property among creditors. Thus, also under this test, the Liquidation Court lacked subject matter jurisdiction to determine IELHC’s assertion of title in IEL’s stock as a related matter to a claim.
Thus, applying the Pacor or the Seventh Circuit test supports a finding that the Liquidation Court did not have jurisdiction to determine the validity of an assertion of ownership in the insurer.
2. Lack of jurisdiction of the Liquidation Court over IELHC’s assertion of title in IEL stock
In summary, the legislature did not grant the Liquidation Court original subject matter jurisdiction to determine ownership rights in assets outside an insurer’s estate, nor has it expressly extended the court’s jurisdiction outside any matters “related to” a claim against the insolvent estate. Based on the ISRLA’s statutory scheme and analogous federal bankruptcy case law, to even be considered by the Liquidation Court as “related to,” any action or remedy sought must have an actual or potential impact upon the insolvent insurer’s estate. A determination of ownership in the insurer does not pass this threshold; thus, the Liquidation Court lacked subject matter jurisdiction to determine IELHC’s assertion of title in IEL’s stock.
The Liquidator’s proper course of action should have been to notify the Liquidation Court of IELHC’s assertion of title to IEL’s stock and resultant entitlement to a residual estate, allow the proper forum to determine the question of IEL’s stock ownership,[20] and only if IELHC is found to be the lawful owner of IEL’s stock, address any claim by IELHC to IEL’s residual surplus in accordance with the priorities provided by HRS § 431:15-332.
C. No time bar to IELHC’s “claim”
The standard of review of the Liquidation Court’s decision as to whether a claim that is subject to HRS § 431:15-325’s proof of claim provision is time barred is abuse of discretion, majority at 62, 346 P.3d at 139, which “occurs where the trial court has clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant.” Ranger Ins. Co. v. Hinshaw, 103 Hawai'i 26, 30, 79 P.3d 119, 123 (2003).
The ISRLA allows late filing of claims.
The liquidator may permit a claimant making a late filing to share in distributions, whether past or future, as if the claimant were not late, to the extent that any such payment will not prejudice the orderly administration of the liquidation ....
HRS § 431:15-325(b) (emphasis added). As is relevant in this case, the Liquidator is permitted discretion under circumstances in which the “existence of the claim was not known to the claimant and that the claimant filed such claim as promptly as reasonably possible after learning of it.” HRS § 431:15-325(b)(l). However, even when the claimant knew of the existence of the claim, a late claim may be considered by the Liquidator.
*87 The liquidator may consider any claim filed late which is not covered by subsection (b), and permit it to receive distributions which are subsequently declared on any claims of the same or lower priority if the payment does not prejudice the orderly administration of the liquidation.
HRS § 431:15-—325(d). Thus, the Liquidator’s discretion to permit late filing is only restricted to ensuring the “orderly administration of the liquidation.” HRS § 431:15-326(b), (d).
The Liquidation Court clearly abused its discretion by determining IELHC’s claim is time barred. First, the claims of shareholders or owners are only distributed by the Liquidator after all other claims to the estate are paid in full. There is no conceivable effect to the insolvent insurer’s estate by claims of shareholders or owners to a residual surplus; consequently, IELHC’s “claim” cannot affect the orderly administration of the liquidation proceedings pursuant to HRS § 431:15-325, subsections (b)(1) or (d).
Second, the majority acknowledges that IELHC’s assertion of title in IEL’s stock did not constitute a claim against IEL’s estate, majority at 68-69, 346 P.3d at 149-50, yet it concludes that “IELHC should have been aware of its status and its resultant shareholder claim against IEL’s estate in 1996. Instead, IELHC waited another eleven years before asserting its claim.” Majority at 75, 346 P.3d at 144. This argument is flawed because even if IELHC had actual or constructive knowledge to raise the issue of title to IEL stock, a determination of ownership of an insolvent insurer is not a matter within the parameters of the ISRLA. Thus, an assertion of title to stock in IEL would not have been subject to the proof of claim provision under HRS § 431:15-326 nor to any time limit under § 431:15-311 or § 431:15-325(b)(1). Further, assuming IELHC had actual knowledge of its purported ownership of IEL stock and considered disputing the issue of stock ownership long before 2008, in the absence of a reasonable expectation to collect a residual surplus in the estate after Classes 1-8 had been satisfied, IELHC had little incentive to justify the cost of litigation to pursue a contingent, asserted right.
Third, by law, a legitimate owner of stock is entitled to that interest after all other claims are resolved and there is a residual surplus. HRS § 431:15-335(a) (“All unclaimed funds subject ... shall be paid ... to the person entitled thereto.... ”). The Liquidator arguably has a duty to act in the interests of persons who have an interest in the residual surplus, even absent a claim filed by such persons. Id.; see supra pp. 55-56, 346 P.3d at 124-25. Consequently, it is a violation of the Liquidator’s statutory duty to fail to distribute a residual surplus to an entitled person when such distribution is possible; further, as it is a substantial detriment to the owners or shareholders to be denied their entitlement, it is thus an abuse of the court’s discretion to affirm such denial.
Fourth, the general purpose of the ISRLA is to minimally interfere with the interests of owners or stockholders, once the interests of insureds, claimants, creditors and the public generally are protected. HRS § 431:15-101(d); see supra pp. 60-61, 346 P.3d at 129-30. Denial of a “claim” to title in stock of an insolvent insurer—when the interests of all of the insureds, claimants, and creditors have, by definition, been satisfied and extinguished—is a maximum, not a minimum, interference in the normal prerogatives of owners and thus contrary to the purpose of the ISRLA.
Fifth, although the Liquidation Court derives its authority from statute, it has “equitable goals and the discretion to craft equitable remedies.” Majority at 61, 346 P.3d at 130. Under equitable principles, escheat of a known interest should be avoided whenever possible. Jenkins v. Wise, 58 Haw. 592, 597, 574 P.2d 1337, 1341 (1978) (“Equity ... abhors forfeitures....”) When no other claimants have interests that the ISRLA mandates to be protected, to find that a shareholder or owner’s claim is time barred is to enforce forfeiture when there is no opposing interest to be defended and is contrary to the equitable principles declared by this court.
*88 III. Conclusion
The two letters to the Liquidator did not constitute a claim against IEL’s estate. The letters did not assert that IELHC was making a claim against the estate and accordingly cannot be transformed by the Liquidator into a claim. Further, the letters did not substantially comply with the proof of claims provision.
Additionally, the Liquidation Court is a court of limited jurisdiction. Its jurisdiction cannot exceed what was expressly granted to it by the legislature. Because the two letters did not represent a claim, the Liquidation Court lacked subject matter jurisdiction to adjudicate IELHC’s assertion of ownership in assets outside the estate, the dispositive issue in this case. Further, determination of a party’s assertion to ownership in an insolvent insurer does not affect the protected interest of insureds, claimants, creditors, and the public in any conceivable way. Thus, for this additional reason, the Liquidation Court lacked subject matter jurisdiction to determine any of the matters asserted in the letters.
Finally, if an insolvent insurer’s estate contains a residual surplus after Classes 1-8 claims have been fully satisfied or accounted for, then by law the lawful owner or stockholder is entitled to the residual surplus, and a Class 9 claim cannot be time barred if it is filed before the surplus has been lawfully escheated to the state.
Therefore, the appropriate disposition of this case is to vacate the Liquidation Court’s Findings of Fact, Conclusions of Law and Orders entered on October 6, 2010, and remand the ease for dismissal.

. ISRLA is Article 15, HRS §§ 431:15-101 to 431:15-411 of the Insurance Code. HRS § 431:15—101 (a) (2005). The Proof of Claim section of the ISRLA provides as follows:
*77 (a) Proof of claim shall consist of a statement signed by the claimant that includes all of the following that are applicable:
(1) The particulars of the claim including the consideration given for it;
(2) The identity and amount of the security on the claim;
(3) The payments made on the debt, if any;
(4) That the sum claimed is justly owing and that there is no setoff, counterclaim, or defense to the claim;
(5) Any right of priority of payment or other specific right asserted by the claimant;
(6) A copy of the written instrument which is the foundation of the claim; and
(7) The name and address of the claimant and the attorney who represents the claimant, if any.
(b) No claim need be considered or allowed if it does not contain all the information in subsection (a) which may be applicable. The liquidator may require that a prescribed form be used, and may require that other information and documents be included.
HRS § 431:15-326 (2005). Thus, counting the requirement of the signature of the claimant in-eluded in (a) and noting that (a)(7) calls for the name and address of both the claimant and the attorney, subsection (a) has nine potentially applicable elements needed to prove a claim.

. See Colo.Rev.Stat. Ann. § 10-3-504(2); Conn.Gen.Stat. Ann. § 38a-906(b); D.C.Code Ann. § 31—1303(b); Ga.Code Ann. § 33-37-4(b); Idaho Code § 41-3304(2); Ind.Code Ann. § 27-9-1-3(b)(2); Iowa Code Ann. § 507C.4.2; Kan. Stat. Ann. § 40-3608(b); Ky.Rev.Stat. Ann. § 304.33-040(3)(a); Me.Rev.Stat. tit. 24-A, § 4354.4; Mich. Comp. Laws Ann. § 500.8104(2); Minn. Stat. Ann. § 60B.04 (Subdivision 3); Miss.Code Ann. § 83-24-9(2); Mo. Ann. Stat. § 375.1154.2; Mont.Code Ann. § 33-2-1305(2); Neb.Rev.Stat. § 44-4804(2); N.J. Stat. Ann. § 17B:32-34(b); Nev.Rev.Stat. Ann. 696B.190.4; N.H.Rev.Stat. Ann. § 402-C:4.III; N.C. Gen.Stat. § 58-30-15(b); N.D. Cent.Code Ann. § 26.1-06.1-04(b); Ohio Rev.Code Ann. § 3903.04(B); R.I. Gen. Laws § 27-14.3-4(b); S.C.Code Ann. § 38-27-60(3)(b); Tenn.Code Ann. § 56-9-104(b); Vt. Stat. Ann. tit. 8, § 7032(b); Wash. Rev.Code Ann. § 48.31.111; Wis. Stat. Ann. § 645.04(3).

.The First Letter states, in full:
Please be advised that my firm and I have been retained to represent Investors Equity Life Holding Company (hereinafter, "Holding Company”) in connection with the recovery of stock of Investors Equity Life Insurance Company of Hawaii, Ltd. (hereinafter, "IEL”).
Recently in 2008, it has come to the attention of the Holding Company that the financial statement filed on February 27, 2008 as the "Liquidator's Interim Report on the Status of Assets” of IEL materially misstates and misrepresents the financial condition of IEL’s estate in liquidation. Rather than the deficit of $13,728,856 shown on the balance sheet in that report, IEL’s estate in fact has a surplus of at least $21,514,556. (The financial statement is subject to an accounting.)
Any taking by the Insurance Commissioner of the State of Hawaii of the stock, or attempt at such taking, in 1994 was not in accordance with the statute authorizing forfeiture of an insurer’s stock in the event its shareholder does not cure a capital impairment, as set forth in section 431:5-101 of Hawai'i Revised Statutes. Moreover, any disposition of the stock or the issuance of the new stock to the Hawai'i Life and Disability Insurance guaranty Association, to a trust for the guaranty association’s benefit, or to any person other than the Holding Company as an equitable or legal owner of such stock would be a further taking without just compensation and ultra vires acts beyond tire statutory authority of the Insurance Commissioner, whether in the capacity of statutory liquidator or regulator, and beyond the authority of the guaranty association as well.
Such takings constitute inter alia takings without just compensation and denial of due process in violation of tire Constitutions of the United States, the State of Hawai'i, and the State of California. As a result, the Holding Company has at present equitable title, legal title, or both to IEL’s stock or to new stock, if any, issued by IEL’s estate after the insolvency proceedings were commenced.
Furthermore, the claims of policy holders, claimants, creditors, and other senior to the Holding Company in the statutory priority of distribution under section 431:15-332 of the Hawai'i Revised Statutes have apparently been fully paid, liquidated, or otherwise protected. As a matter of equity and public policy, the Holding Company as shareholder, or legal or equitable owner, of the stock of IEL should receive distribution of the remaining surplus of the estate. Any escheat of such remaining surplus to the State of Hawai'i, and agency thereof, or the general fund would constitute a further constitutional taldng, and an illegal tax as well. See, Lingle v. Chevron U.S.A. Inc., 544 U.S. 528, 125 S.Ct. 2074, 161 L.Ed.2d 876 (2005); Hawaii Insurers Council v. Lingle, 117 Hawai'i 454, 184 P.3d 769 (Haw.App.2008). Therefore, it is respectfully demanded that the Honorable J.P. Schmidt, Insurance Commissioner of the State of Hawai'i deliver the Holding Company all authorized, issued, and outstanding shares of stock of IEL, and any certificates representing said shares.
Please contact me to discuss this matter further, and to arrange a meeting with you and the Commissioner Schmidt at a convenient time and place.
(Emphases added).

. The question of whether the seizure was contrary to law is not before this court.

. The majority takes this statement from the First Letter out of context, describing the statement as "IELHC's argument in the letter that it 'should receive distribution of the remaining surplus of the estate.” ’ Majority at 67 n. 32, 346 P.3d at 136 n. 32. The majority does not discuss the prefatory clause that introduces this statement as a characterization of public policy.

. HRS § 431:15-332 provides in relevant part:
The priority of distribution of claims from the insurer's estate shall be in accordance with the order in which each class of claims is herein set forth. Every claim in each class shall be paid in full or adequate funds retained for the payment before the members of the next class receive any payment. No subclasses shall be established within any class. The order of distribution of claims shall be:
(1) Class 1. The costs and expenses of administration. ...
(2) Class 2. All claims under policies for losses incurred, including third party claims....
(3) Class 3. Claims of the federal government.
(4) Class 4. Debts due to employees for services performed....
(5) Class 5. Claims of general creditors.
(6) Class 6. Claims of any state or local government. ...
(7) Class 7. Claims filed late or any other claims other than claims under paragraphs (8)and (9).
(8) Class 8. Surplus or contribution notes, or similar obligations, and premium refunds on assessable policies....
(9)Class 9. The claims of shareholders or other owners.
(Emphases added).

. That subsection provides in full:
All unclaimed funds subject to distribution remaining in the liquidator's hands when the liquidator is ready to apply to the court for discharge, including the amount distributable to any creditor, shareholder, member, or other person who is unknown or cannot be found, shall be deposited with the director of finance, and shall be paid without interest except in accordance with section 431:15-332 to the person entitled thereto or the person's legal representative upon proof satisfactory to the director of finance of the person's right thereto. Any amount on deposit not claimed within six years from the discharge of the liquidator shall be deemed to have been abandoned and shall be escheated without formal escheat proceedings and be deposited with the general fund.
HRS § 431:15-335(a).

. "The purpose of [the ISRLA] is the protection of the interests of insureds, claimants, creditors, and the public generally, with minimum interference with the normal prerogatives of the owners and managers of insurers....” HRS § 431:15-101(d). "Absent from the purposes of the [ISR-LA] is the protection of the shareholders of the insolvent insurance company.” Metcalf v. Investors Equity Life Ins. Co. of Hawai'i, 80 Hawai'i 339, 340, 910 P.2d 110, 111 (1996). However, nothing in Metcalf indicates that the rights of shareholders are extinguished by the seizure of an insolvent insurer by the Commissioner acting under the ISRLA.

. The majority finds that the Second Letter "was insufficient to assert a claim independently.” Majority at 68, 346 P.3d at 137. In regard to the California lawsuit, the majority finds that "it is unnecessary to determine whether the California lawsuit was the substantial equivalent of a proof of claim such that it would trigger the Liquidator’s adjudication, because the first letter alone sufficiently satisfied the HRS § 431:15-326 proof of claim requirements.” Majority at 69, 346 P.3d at 138 (emphasis added).

. Of course, an equitable owner of a company may, under certain conditions, have claims against that company. See Majority at 68 n. 33, 346 P.3d at 137 n. 33 ("The Dissent seems to imply that shareholders and owners, by definition, cannot assert claims against an estate under ISRLA.”). However, an assertion that "I own that” is legally distinct from an assertion that “I am owed that.”

. For instance, see HRS § 431:15-332 ("The priority of distribution of claims from the insurer's estate see also HRS §§431:15-304(a) (2005), 431:15-305(a) (2005), 431:15-305(b), 431:15-307(b) (2005), 431:15-310(a)(8) (2005), 431:15-313(a) (2005), 431:15-313(b), 431:15-315(a) (2005), 431:15-317(a)(3) (2005), 431:15-317(i), 431:15-317(i), 431:15-317(j), 431:15-321 (2005), 431:15-330 (2005).

. The majority holds that the Liquidation Court's equitable distribution of assets and apportionment of losses should be reviewed under the abuse of discretion standard, and that the court’s decisions regarding questions of law must be reviewed de novo. Majority at 62, 346 P.3d at 131. As evidenced by the majority’s statutory interpretation and analysis of case law, a determination of whether or not a communication amounts to a claim against an estate is a question of law. Thus, a de novo right/wrong standard is the appropriate standard to review a *83 determination of whether a communication amounts to a claim.

. While not precisely articulated, IEL raised the issue of its purported stock ownership and implied that a determination of ownership was beyond the power of the Liquidator and thus beyond the jurisdiction of the Liquidation Court.
Further, an appellate court has a duty to address this question because "the lack of jurisdiction over the subject matter cannot be waived by the parties. If the parties do not raise the issue, a court sua sponte will, for unless jurisdiction of the court over the subject matter exists, any judgment rendered is invalid.” Chun v. Employees’ Ret. Sys. of the State of Hawai'i, 73 Haw. 9, 14, 828 P.2d 260, 263 (1992) (citation and internal quotation marks omitted).

. An ownership determination as to the residual surplus is in fact simpler than the third party claim exception for two reasons. First, it does *84 not involve assessment of the residual estate’s potential liability/exposure to the claim because it is, by definition, the final priority. HRS § 431:15—332(9); see supra note 6. Furthermore, an assertion of ownership to the insurer’s stock or a Class 9 claim in the insurer's residual surplus, as opposed to third party claims, does not directly affect the purpose of the ISRLA to protect "the interests of insureds, other claimants, creditors, and the public,” HRS § 431:15-101(d), because by definition all claims by such parties have been paid in full. Thus, the only remaining purpose of ISRLA is to provide "minimum interference with the normal prerogatives of the owners and managers of insurers.” Id.

. The term "owners” in HRS § 431:15—101 (d) incorporates "shareholders.” Class 9 claimants are defined as "shareholders or other owners.” HRS § 431:15-332(9) (emphasis added). The legislative use of “or” instead of "and” is indicative of the legislative intent to place these claimants on equal footing under the ISRLA.

. See supra note 7.

. Further, the Liquidator may have a duty to attempt to locate potential Class 9 claimants before the insurer’s residual estate can be escheat-ed to the state.

. The Pacor test has been adopted by all circuits except the Seventh Circuit. See In re Cuyahoga Equip. Corp., 980 F.2d 110, 114 (2d Cir.1992) (“The test for determining whether litigation has a significant connection with a pending bankruptcy proceeding is whether its outcome might have any 'conceivable effect’ on the bankrupt estate”); In re G.S.F. Corp., 938 F.2d 1467, 1475 (1st Cir.1991); In re Gardner, 913 F.2d 1515, 1518 (10th Cir.1990); In re Lemco Gypsum, Inc., 910 F.2d 784, 788, n. 19 (11th Cir.1990); Robinson v. Michigan Consol. Gas Co., 918 F.2d 579, 583-584 (6th Cir.1990); In re Wood, 825 F.2d 90, 93 (5th Cir.1987); A.H. Robins Co. v. Piccinin, 788 F.2d 994, 1002, n. 11 (4th Cir.1986); In re Dogpatch U.S.A. Inc., 810 F.2d 782, 786 (8th Cir.1987); In re Fietz, 852 F.2d 455, 457 (9th Cir.1988); In re Wood, 825 F.2d 90, 93 (5th Cir.1987).

. St. John Med. Ctr. appears to be the only case that addressed the scope of the Liquidation Court’s subject matter jurisdiction, despite the large number of jurisdictions with substantially similar provisions.

. This opinion does not express any view with regard to the California Lawsuit as to whether the proper forum is California courts, Hawai'i courts, or some other forum.